# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| LIBBY HEWES | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | |
| | ) | |
| BENJAMIN PUSHARD, in his Personal | ) | |
| and Professional Capacity as an Employee/ | ) | |
| Contractor with the Brewer School Dept., | ) | |
| | ) | |
| SAMANTHA PANGBURN, in her | ) | |
| Personal and Professional Capacity as | ) | |
| Principal of Brewer High School, | ) | |
| | ) | |
| MORGAN SMALL, in her Personal | ) | **DOCKET NO. CV-21-** |
| and Professional Capacity as Coach/ | ) | |
| Employee with Brewer High School, | ) | |
| | ) | |
| PHIL PUSHARD, | ) | |
| | ) | |
| JACKIE PUSHARD, | ) | |
| | ) | |
| MATTHEW PUSHARD, | ) | |
| | ) | |
| BREWER SCHOOL SYSTEM, | ) | |
| | ) | |
| PATRICK HEALY, in his Personal and | ) | |
| Professional Capacity as Owner and | ) | |
| Principal of Healy Chiropractic, | ) | |
| | ) | |
| HEALY CHIROPRACTIC, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Officer John/Jane Doe, in his/her | ) | |
| Personal and Professional Capacity as | ) | |
| Officer, Brewer Police Department, | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT
## (WITH DEMAND FOR JURY TRIAL)

### Jurisdiction and Venue

1.      Jurisdiction is proper because Plaintiff is a resident of Penobscot County, Maine, and the Defendants are residents and/or entities of the State of Maine, or availed themselves of jurisdiction of this Court due to the substantial actions taken in Maine, over a Maine resident, in the above captioned matter.

2.      Venue is proper as the Plaintiff is a resident of Penobscot County, Maine.

### Parties

3.      Plaintiff, Libby Hewes, is a resident of Brewer, Maine.

4.      At all times mentioned herein, Defendant, Benjamin Pushard, an individual, was duly appointed and acting as a trainee, employee and/or contractor with and through Brewer High School (hereinafter BHS) and/or the Brewer School System (hereinafter BSS), and was, at all material times herein, acting under the color of state and federal law and in his capacity as trainee, employee and/or contractor with BHS and/or BSS, had oversight and control of all students that he was directly involved with or had knowledge of; Defendant Benjamin Pushard is sued in his personal and professional capacity.

5.      At all times mentioned herein, Defendant, Samantha Pangburn, an individual, was duly appointed and acting as Principal, or otherwise in an administrative position with and through BHS/BSS, and was, at all material times herein, acting under the color of state and federal law and in her capacity as an administrator with BHS and/or BSS, had oversight and control of all students, employees, coaches and/or contractors at BHS/BSS or involved with BHS/BSS; Defendant Pangburn is sued in her personal and professional capacity.

6.      At all times mentioned herein, Defendant, Morgan Small, an individual, was duly appointed and acting as Coach of the Brewer High School Junior Varsity Softball Team, or otherwise in a position having direct oversight of students involved with the Brewer School System generally and was, at all material times herein, acting under the color of state and federal law and in her capacity as a coach with BHS/BSS, had oversight and control of all students who were directly involved with her or who she had direct knowledge of; Defendant Small is sued in her personal and professional capacity.

7.      At all times herein, Defendant Brewer School Systems, had complete control and oversight of every student enrolled within it as well as every administrator, employee, contractor, trainee or other adult figure coming into contact with any students enrolled within it; acting under the color of state and federal law, Brewer School Systems principal place of business is in Brewer, Maine and it is sued in its professional capacity.

8.      At all times herein, Defendant Phil Pushard, a resident of Brewer, Maine and former State Trooper, the father of Benjamin Pushard, was acting under the color of state and federal law and is sued in his personal capacity.

9.      At all times herein, Defendant Jackie Pushard, a resident of Brewer, Maine, the mother of Benjamin Pushard, was acting under the color of state and federal law and is sued in her personal capacity.

10.     At all times herein, Defendant Matthew Pushard, a resident of Brewer, Maine, the brother of Benjamin Pushard, was acting under the color of state and federal law and is sued in his personal capacity.

11.     At all times herein, Defendant Patrick Healy, owner of Healy Chiropractic, LLC, of Brewer, Maine, was acting under the color of state and federal law and is sued in his personal and

professional capacity.

12.   At all times herein, Defendant Healy Chiropractic, LLC, acting under the color of state and federal law, with a principal place of business is in Brewer, Maine, is sued in its professional capacity.

13.   At all times herein, Officer John/Jane Doe, an employee of the Brewer Police Department, was acting under the color of state and federal law and is sued in his/her personal and professional capacity.

<u>**General Allegations-Facts**</u>

14.   Beginning in approximately April, 2014, Plaintiff was struggling with her mental health due to the pressures of being a young, teenage girl, in the twenty first century.

15.   Plaintiff had an established relationship with Defendant Small and looked up to her; Plaintiff began to share her personal thoughts and struggles with Defendant Small on a daily basis.

16.   These conversations were through text messages and occasionally Snapchat.

17.   These conversations between Plaintiff and Defendant Small continued for approximately eight (8) months (regarding Plaintiff's mental health and the serious struggles she had daily); Defendant Small never told any authorities at Plaintiff's school or relayed any information to Plaintiff's parents.

18.   Beginning in approximately December, 2014, Defendant Small would periodically talk about a person she dated in high school and went to prom with, with the Plaintiff; this person's name was Ben Pushard.

19.   Defendant Small would talk about how she still had feelings for Defendant Benjamin Pushard even though he did not like her back.

20.   Defendant Small would disclose personal information to the Plaintiff about her prior relationship with Defendant B. Pushard, such as how she and Defendant B. Pushard only held hands and slow danced to one song at prom and also that they got a picture together and he put his arm around her.

21.   During this same general time frame, Defendant Small told Plaintiff that Defendant B. Pushard was a really helpful and kind person and could possibly help Plaintiff with her mental health; notwithstanding that he was not a mental health professional.

22.   Based on Defendant Small's insistence, Plaintiff became friends with Defendant B. Pushard on Snapchat and started talking strictly about mental health, school, and struggles; no flirting had begun yet.

23.   Defendant B. Pushard was, at all times, working for the Brewer School System either as a student trainee, an employee and/or a contractor, whether directly or by and through Healy Chiropractic, LLC, and/or Patrick Healy.

24.   The Snapchatting between Plaintiff and B. Pushard went on for a few months, however, Plaintiff attempted to try to talk with Defendant Small over talking with Defendant B. Pushard, but Defendant Small would not make herself available to Plaintiff; Plaintiff felt she had no other outlet other than Defendant B. Pushard.

25.   In approximately January, 2015, Plaintiff and Defendant B. Pushard were both planning to attend a BHS hockey game and Defendant B. Pushard offered to drive Plaintiff home after the game.

26.   Plaintiff informed her sister that she would not need a ride home as she had an alternate ride; the ride home was with Defendant B. Pushard.

27.  While at the game, Plaintiff and B. Pushard were talking on Snapchat and Defendant B. Pushard instructed Plaintiff to meet him at his red jeep in the parking lot.

28.  Defendant B. Pushard did not walk out of the Penobscot Ice Arena with Plaintiff, as he was scared of being seen with someone so much younger; Plaintiff was thirteen (13) years old at the time.

29.  Plaintiff got into the passenger's seat of the jeep and remembers it being very cold; Defendant B. Pushard told Plaintiff that his jeep takes a while to heat up.

30.  Defendant B. Pushard drove Plaintiff down the Acme road and had limited conversation but turned up the song "I wanna love somebody like you", very loudly and Plaintiff felt awkward and shy and uncomfortable; Plaintiff was dropped off at home.

31.  Plaintiff and B. Pushard continued Snapchatting and talking about mental health; however, the flirting began shortly after the initial in person meeting after the hockey game.

32.  During approximately February and March, 2015, Snapchat and Twitter conversations continued between the Plaintiff and Defendant B. Pushard.

33.  Flirting began during these months and continued into Plaintiff's spring softball season; this was during Plaintiff's 8th grade year; at this time, the conversation started to become more sexual in nature and more things were discussed that were outside Plaintiff's Mental Health, and became inappropriate and quite vulgar.

34.  In approximately the beginning of April 2015, and all throughout the month, the relationship between Plaintiff and Defendant B. Pushard went from conversations and fantasies, to actual physical interactions between the two of them.

35.     During this period of time, Defendant B. Pushard "fingered" Plaintiff numerous times; Plaintiff was 13 years old at the time and was playing on the "A" team for Brewer Community School.

36.     Brielle Dickinson, Plaintiff's best friend at the time, was made aware about the relationship, by Plaintiff.

37.     Soon after, Plaintiff Facetimed Defendant B. Pushard from her living room and Defendant B. Pushard sang the song "Never Stop" to Plaintiff, in front of Brielle.

38.     Brielle thought it was cute and Plaintiff didn't think anything was wrong with it at the time.

39.     That became "their song" according to Defendant B. Pushard.

40.     Plaintiff and Defendant B. Pushard began kissing during the month of April, 2015; the kiss took place in Defendant B. Pushard's jeep in the St. Joseph's Church parking lot.

41.     During this same approximate time period, oral sex was given by both Plaintiff and Defendant B. Pushard, to the other.

42.     Also, during this same approximate time period, Plaintiff got a ride home from Defendant Pushard after softball practice; Plaintiff walked up to Coffin field from BMI and was seen by the BHS JV softball team, who were practicing on Coffin field at the same time.

43.     Plaintiff was, thereafter, questioned by her coach, Danielle McDonough, a couple of days later, about the ride.

44.     Coach McDonough told Plaintiff that she "heard about the ride from somebody who saw it first hand, in the Hannaford parking lot"; Coach McDonough expressed her concern and mentioned she would be talking with Plaintiff's parents if this were to happen again.

45.     To the best of Plaintiff's recollection, Coach McDonough had a conversation with Plaintiff's parents expressing her concern and told Plaintiff's parents that she could only send Plaintiff home with her sister or a family member from this point forward, but did not report anything to school administrators.

46.     On information and belief, Defendant Small was aware of the ride, and the majority of her team, the BHS JV softball team saw Defendant B. Pushard give Plaintiff a ride.

47.     At no time did any adults involved contact the school or any administrators to voice concern.

48.     During April, 2015, the following, specific contact occurred between Plaintiff and B. Pushard:

   a.     April 6th: Plaintiff rubbed her hands on/between Defendant Pushard's legs.

   b.     April 11th: Defendant B. Pushard devised a plan for Plaintiff and Brielle to go with him for a ride in his Jeep; Defendant Pushard packed blankets and pillows for the back seat; The three of them plan to meet up, and Defendant B. Pushard took the girls to a location where he parked his Jeep; Brielle sat in the front seat while Plaintiff and Defendant B. Pushard partook in sexual actions such as, oral sex and fingering, as well as Ben kissing Libby's neck, in the backseat; Defendant B. Pushard had not agreed to kiss Plaintiff yet, as he still wanted to wait until she was 18, as he stated "the lips are off-limits"; Brielle was on her phone in the front seat with headphones on during this interaction; Plaintiff and Brielle both thought this was completely okay and normal; Thereafter, Defendant B. Pushard sent messages to Plaintiff over Snapchat where he spoke about "fingering" Plaintiff and also vulgar descriptions about Plaintiff's genitalia.

c.     April 15th: Defendant B. Pushard kissed Plaintiff in his Jeep in the St. Joseph's Church parking lot in Brewer; this was the first kiss on the lips between Defendant B. Pushard and Plaintiff; Plaintiff was thirteen (13) years old at the time.

d.     Between April 15th and April 24th: Defendant B. Pushard instructed both Plaintiff and Brielle to delete images of him that were on each of their phones, because Defendant B. Pushard was concerned he would get in trouble if anybody saw them.

e.     Plaintiff thereafter asked Defendant B. Pushard "If I were to post this picture when I turned 18, would you still get arrested?", to which Defendant B. Pushard replied with "yes."

f.     April 24th: Defendant B. Pushard "fingered" Plaintiff.

g.     April 26th: Defendant B. Pushard performed oral sex on Plaintiff, and, thereafter, through Snapchat, he went into explicit detail about each thing he did to Plaintiff while performing oral sex earlier that day; Defendant B. Pushard wrote to the Plaintiff that "When I went home I couldn't stop smiling, it was the best thing ever in my life."

49.   During approximately May, 2015, the sexual acts continue to progress between Plaintiff and Defendant B. Pushard; they became more frequent, Plaintiff began lying to her parents more often about going for walks and going on runs; the conversations between Plaintiff and Defendant B. Pushard began transitioning to discussions about sexual intercourse.

50.  However, Defendant was hesitant about intercourse, as he did not want to get caught having sex with a 13/14-year-old, despite everything else that had occurred.

51.  On approximately May 3, 2015, Plaintiff walked to St Joseph's Church and Defendant B. Pushard transported her in the trunk of his vehicle, to his parent's house on Starlight Drive in Brewer, where he was residing.

52.  Defendant B. Pushard drove into the garage and shut the garage door before Plaintiff was allowed to get out of the vehicle.

53.  Defendant B. Pushard then uncovered Plaintiff from the blankets he had covered her with.

54.  Plaintiff was instructed to crawl through Defendant B. Pushard's kitchen as he wouldn't shut all of the curtains, so none of his neighbors saw Plaintiff.

55.  Defendant B. Pushard took Plaintiff upstairs to his room and they laid in his bed; Defendant B. Pushard kept his boxers on and rubbed himself against Plaintiff.

56.  A couple of days later, Defendant B. Pushard contacted Plaintiff via Snapchat and asked her to "ease his mind", as he was concerned that he impregnated Plaintiff, notwithstanding that the two did *not* have intercourse, and also that he *did not* ejaculate.

57.  Defendant B. Pushard instructed Plaintiff to take a pregnancy test to calm his nerves.

58.  Plaintiff took a pregnancy test at her friend Brielle's house and it was negative; Plaintiff had never taken a pregnancy test prior to this and she was very scared; Defendant B. Pushard put false information and worries into her head at such a young age.

59.  Plaintiff was 13 years old at the time she took her first pregnancy test.

60.   On approximately May 17, 2015, Defendant B. Pushard sent a message to Plaintiff whereby he stated that "I love your boobs right now.", Plaintiff responded, "I want them big.", Defendant B. Pushard then replied, "I want them big too."

61.   Plaintiff had just turned fourteen (14) at the time of this conversation.

62.   On approximately May 19, 2015, the Plaintiff and Defendant B. Pushard were communicating through Snapchat and fantasizing about the first time they would have sex.

63.   Plaintiff explained it was going to be very painful since she was very young, and Defendant B. Pushard said "not to worry and he would take it slow and make sure Plaintiff would enjoy it."

64.   Plaintiff and Defendant discussed anal sex and Plaintiff asked if Defendant B. Pushard would want that, to which Defendant B. Pushard said that he would accept anal sex, but that "Your vagina is what I really want to stick my dick into."

65.   On approximately May 25th 2015, Defendant B. Pushard asked Plaintiff to be his girlfriend.

66.   On approximately June 2, 2015, the conversations about intercourse increase and Defendant B. Pushard stated that "It will be when we both know you can be out without being restricted on how much time you have so we can enjoy it, I'll bring paper towels."

67.   Defendant B. Pushard began to become controlling over the Plaintiff and he would regularly instruct Plaintiff to block certain people on social media that she went to school with.

68.   On approximately June 6, 2015, Defendant B. Pushard and Plaintiff had sex for the first time.

69. Defendant B. Pushard put two rubber gloves on as protection, to prevent Plaintiff from getting pregnant; the act lasted no longer than 3 minutes and took place in the passenger seat of Defendant B. Pushard's red Jeep.

70. After it was over, Defendant B. Pushard was very nervous that he got Plaintiff pregnant and again wanted her to take a test just in case.

71. Defendant B. Pushard was very nervous that he got Plaintiff pregnant so he asked if she would take a Plan B pill; on information and belief, Defendant B. Pushard paid for the pill and Plaintiff took it.

72. A couple of days later Defendant B. Pushard wanted to have sex again; he again wore two rubber gloves that he took from his mother's stash in the garage of his family home.

73. Defendant B. Pushard would bring rubber gloves that belong to his mother, as she worked in the ICU and would oftentimes have extras and would bring them home and leave them in the garage; Defendant B. Pushard decided it was safer to use rubber gloves rather than a condom, to prevent Plaintiff from getting pregnant, he would also use them to "finger" the Plaintiff if and when she was on her period; Plaintiff was between the ages of fourteen (14) and fifteen (15) when this would occur.

74. Throughout the month of June there were frequent meetups between the Plaintiff and Defendant B. Pushard; Brielle would also be included in some of these meetings.

75. By July, 2015, Plaintiff and Defendant B. Pushard were dating and in a full-on sexual relationship, on a daily basis.

76. On one occasion, Plaintiff, Defendant B. Pushard and Brielle, attended a movie at the "cheap seats" (Defendant B. Pushard wanted to go to the cheap seats because he did not want to be seen at the Bangor Cinema with Plaintiff and Brielle being underage),

whereby Defendant B. Pushard touched Plaintiff between her legs with his hands and also "fingered" Plaintiff, while Brielle was sitting on the other side of Plaintiff.

77. Any time Defendant B. Pushard would transport Plaintiff to his parent's home on Starlight Drive in Brewer, he would bring blankets and put Plaintiff in his trunk and cover her so that if he was stopped by any law enforcement, he would not be seen with a minor in his vehicle.

78. During the month of December, 2015, and continuing on until later months, the tension between Plaintiff and Defendant B. Pushard increased, as he began feeling very jealous towards people Libby went to school with and did not like certain guy friends she would be around.

79. Defendant B. Pushard restricted Plaintiff from having relationships with anybody her own age other than Brielle.

80. On approximately May 25, 206, Plaintiff and Defendant "celebrated" a year anniversary as a "couple"; the sexual meetings would continue at the Conservation Club and the church and Plaintiff would go to Defendant B. Pushard's parent's house a lot more often, via his trunk.

81. During the Plaintiff's Sophomore year of high school, serious rumors started to go around the school about Plaintiff's and Defendant's relationship.

82. In approximately April, 2017, Plaintiff was in the gym for class, and a classmate, Nate Laskey, made a comment to Libby about how she should go f*** her 22-year-old boyfriend.

83. Nate Lasky was referring to Defendant B. Pushard.

84. Plaintiff immediately went to the office and asked to speak with the principal at the time, Samantha Pangburn.

85. Plaintiff sat down with Principal Pangburn and explained her "concerns" about the "rumors" that were going around regarding Plaintiff and Defendant B. Pushard.

86. Plaintiff explained that people were talking about herself and Defendant B. Pushard having a sexual relationship.

87. Plaintiff further told Principal Pangburn that she did not know Defendant B. Pushard very well and that she, Plaintiff, wasn't sure why the rumors were happening.

88. Principal Pangburn told Plaintiff that she would "keep an ear out" and if she heard anything she would squash the rumors if she were to hear any.

89. Principal Pangburn did not take what Plaintiff said any further and it ended in her office, notwithstanding being responsible for looking into why the rumors were happening, further documenting the issue, conducting an investigation (even on a minimal basis), etc., but took no action; at the very least Defendant Pangburn should have investigated *why* rumors were occurring to rule out bullying, on a minimal level.

90. In approximately May, 2017, Plaintiff "broke up" with Defendant B. Pushard.

91. In approximately April, 2020, Defendant B. Pushard messaged Plaintiff on saying that his dick was hard and he was horny and that he got a new house.

92. Defendant B. Pushard asked if Plaintiff would come keep him company at his new house. Libby was very offended and did not speak to Ben after that until June.

93. Plaintiff, though counseling, determined that she was ready to confront Defendant B. Pushard about what he had done to her, *to wit*, the sexual abuse of her, manipulation, etc.

94.  After Plaintiff tried calling Defendant B. Pushard and couldn't get through, she thought perhaps he may have blocked her number.

95.  Thereafter, Plaintiff then tried to call Matt Pushard, Defendant B. Pushard's brother, to see if he could have his brother call her.

96.  Defendant M. Pushard declined the call, so Plaintiff texted him and stated "I know this is going to sound weird, but I need you to have your brother call me, this is important.". Matt then replied with, "Who is this?". Plaintiff replied with, "Libby. Give him my number and have him call me.". Defendant M. Pushard then stated "Libby who?". Plaintiff then replied with, "Matt, please have him call.". Defendant M. Pushard then stated "Who is this? Libby who?". Plaintiff responded, "It's important.".

97.  Defendant M. Pushard thereafter then called Plaintiff and Plaintiff asked to speak with Defendant B. Pushard.

98.  Defendant M. Pushard then replied with, "Well, Libby can I just ask you something?", then proceeding to ask, "You said yes right?"

99.  Plaintiff then stated that there is an age of consent for a reason, meaning eighteen (18) years old), as it wouldn't matter if she said "yes" to Defendant B. Pushard.

100. Defendant M. Pushard then replied with "I am just asking, you never said no right?"

101. Clearly Defendant M. Pushard knew of the illegal sexual relationship between Plaintiff and Defendant B. Pushard and failed to intervene at any time.

102. Plaintiff was ultimately able to get Defendant B. Pushard on the phone; he was extremely nervous, shaky, and was crying on the phone.

103. Defendant B. Pushard stated to Plaintiff that he was concerned he was going to get in trouble and he further explained that he has worked so hard and did not want to have it all ruined.

104. Plaintiff explained that she deserved an apology and Defendant B. Pushard agreed.

105. Plaintiff then explained that Defendant B. Pushard needed to meet her in person for the apology so it was meaningful.

106. Defendant B. Pushard was extremely hesitant to meet in person, as he had a new girlfriend and he did not want his girlfriend finding out; however, he agreed to meet Plaintiff in person for an apology later that week when he returned from Camp.

107. Plaintiff then told her parents about the illegal relationship that went on with Defendant B. Pushard; they were extremely surprised and heartbroken that she had to go through that.

108. After initially reneging on his agreement to meet in person, because Defendant B. Pushard was "uncomfortable" meeting in person, he ultimately agreed to meet Plaintiff in person and they met at the Brewer Walmart, around Sunset, in June 2020. Both parties stayed in their own vehicles and Libby locked her door. Libby had a witness on speakerphone, without Defendant B. Pushard's knowledge, as safety and as a witness; the parties spoke through open windows.

109. Defendant B. Pushard's apology was non-remorseful; he was only out for himself and he was only concerned about not getting in trouble and covering up his reputation.

110. Defendant B. Pushard did not seem to care much about how badly he hurt Plaintiff or how much he took away from her life.

111.   Defendant B. Pushard explained that he was young, dumb, and inexperienced with girls and that is why he decided to have an inappropriate relationship with a thirteen-year-old.

112.   Plaintiff demanded that Defendant B. Pushard meet with her parents to apologize and also that he report the illegal relationship to his parents, although Plaintiff, on information and belief, has firsthand knowledge that his parents knew, or should have known of the illegal relationship while it was ongoing.

113.   Plaintiff does not believe that Defendant B. Pushard told his parents, although he claims he did; however, Plaintiff has documentation showing that Defendant J. Pushard, Defendant B. Pushard's mother, mother was aware of the conversations he was having with a 13- to 14-year-old while those conversations were occurring.

114.   Defendant J. Pushard took no steps to intervene and to make her son end the illegal relationship.

115.   Defendant P. Pushard, Defendant B. Pushard's father, also had knowledge of the Defendant communicating with a 13 to 14-year-old girl and took no action to intervene or to make Defendant B. Pushard stop.

116.   Defendant P. Pushard had "caught wind" of some rumors about Plaintiff and Defendant B. Pushard, and he told Defendant B. Pushard "that he wanted it to stop."

117.   Plaintiff was present on FaceTime during the encounter between Defendants P. Pushard and B. Pushard.

118.   Defendant P. Pushard explained "he did not want to know anything about it, he just wanted it to stop."

119.   Plaintiff's parents met Defendant B. Pushard at Cascade Park in Bangor, whereby Defendant B. Pushard was very honest and emotional.

120. Defendant B. Pushard was very raw and told them the truth about almost everything that had happened between he and Plaintiff throughout the years.

121. Defendant B. Pushard video recorded full intercourse with Plaintiff in his bedroom when she was 14 years old; this was taken on his iPad.

122. Defendant B. Pushard took numerous photographs of the Plaintiff, both explicit as well as less explicit, but nevertheless sexual in nature and illegal/inappropriate.

123. On one occasion, while at the Conservation Club, a Brewer Police officer was checking the area after dark and questioned Defendant B. Pushard as to why he was there with Plaintiff; Defendant B. Pushard explained Plaintiff's parents knew her whereabouts and stated "we were just leaving and I am bringing her home now."

124. Sexual intercourse had just ended, seconds before the police officer arrived on scene; the officer took no steps to investigate why an adult male was with a young teenage daughter in a remote, isolated spot, after hours.

125. The Plaintiff has since further struggled with her mental health and emotional well-being as a result of all of the defendants' actions.

126. Plaintiff has been injured both physically and emotionally and will likely never fully recover from the abuse she withstood based on the actions of all of the named defendants.

127. Plaintiff is seeking damages for her injuries.

128. At all times pertinent herein, Defendant B. Pushard, intentionally and purposefully induced Plaintiff to conceal the illegal relationship for his own personal gain and satisfaction, through his position of power and control over her to accomplish this.

129.   The remaining defendants knew or should have known of Defendant B. Pushard's actions and conduct towards Plaintiff and failed to protect her; therefore, they are all proximately liable to her in damages for Defendant B. Pushard's conduct.

130.   At all times pertinent herein, Defendant Benjamin Pushard, induced the Plaintiff to conceal their illegal relationship for his own personal gain and satisfaction, using his power and control over her to accomplish this; this occurred while Defendant B. Pushard interned/worked/contracted for and/or with the BHS/BSS as an athletic trainer.

131.   Defendants Healy and Healy Chiropractic, LLC, worked for/contracted with the Brewer School System for athletic training to the various BHS/BSS athletic programs and, at all times herein, employed Defendant B. Pushard; Defendant Brewer School System, Defendant Samantha Pangburn, Defendant Healy and Defendant Healy Chiropractic LLC, at all times had complete oversight and control of Defendant Benjamin Pushard and failed to discharge their oversight duties, allowing Defendant B. Pushard to injure the Plaintiff; therefore, they are all proximately liable to her in damaged for Defendant nB. Pushard's conduct.

132.   All defendants knew or should have known of Defendant B. Pushard's actions and conduct towards Plaintiff and failed to protect her; therefore, they are all proximately liable to her in damages for Defendant B. Pushard's conduct.

133.   As a direct and proximate result of the actions of Defendants and their breach of duty to the Plaintiff, Plaintiff was seriously damaged.

134.   Defendants B. Pushard, J. Pushard, P. Pushard and M. Pushard conspired against the Plaintiff to deprive her of her rights as aforesaid and committed the stated wrongs against her all with the knowledge of the wrongs involved, which caused her harm and damages.

135.   These Defendants are vicariously liable for the damages to the Plaintiff.

136.   The conduct of the Defendants, each of them, and collectively, in their professional capacities and individually, was intentional and malicious and said conduct was so reckless, deliberate, and outrageous, as to be beyond all bounds of decency and to imply malice towards the Plaintiff.

137.   As a direct and proximate result of said intentional, reckless, deliberate, malicious and, or outrageous conduct of the Defendants, the Plaintiff was caused to suffer severe emotional and physical distress, humiliation, and mental anguish, all as more particularly set forth herein.

**Count I**
**(42 USC §1983)**

138.   The Plaintiff repeats and re-alleges paragraphs 1 to 137 of this Complaint as though fully set forth herein.

139.   The Plaintiff had a clearly establish right under the Fourth and Fourteenth Amendments to the United States Constitution not to be assaulted, battered, sexually assaulted, or otherwise injured as a student at Brewer High School, by Defendants, nor be denied her rights to services, aids and care for her physical, medical and psychological injuries.

140.   At all times relevant to this Complaint, Defendants were acting under the color of law, statute, ordinance, regulations, actions or usage of the State of Maine, City of Brewer or County of Penobscot, and had actual notice of the wrongdoings of Defendants against her, and failed to protect, intervene, report to others, violating mandating reporting under the law, of Defendants misconduct toward Plaintiff.

141.   The Defendants' assaultive acts, non-protection and non-reporting of violations of her

constitutional and statutory rights.

142. By the actions described above, the Defendants have deprived the Plaintiff of her clearly established rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, to be free from harm and assaults and the Constitution and Laws of the State of Maine and United States.

143. The Defendants, by and through their agents, knowingly and with deliberate indifference and reckless disregard to the statutory and Constitutional rights of Plaintiff, maintained and permitted official policies and customs and practices of permitting the occurrence of the types of wrongs set forth hereinabove, and improperly hired, trained, supervised and retained culpable Defendants anyway.

144. These policies and/or customs and practices included, but limited to, assault, battery, sexual assault, including Maine and Federal statutes.

145. Also, the Government policies were the moving force behind their actions, including, but not limited to, the improper hiring, supervision, training and retention of Defendants, allowing Defendants to have contact with Plaintiff, including assaultive and sexually abusive behavior and failing to report and stop the conduct.

146. In addition, Defendant Pangburn, principal of the Brewer High School, knew or should have known of the customs and practices which led directly to the injuries sustained by the Plaintiff, and in violation of her clearly established rights.

147. The Defendants all failed to consider the following:

    a.    The facts and circumstances of this case, including the level of crime alleged, and its severity;

    b.    the status of the Plaintiff as a minor female and Defendant's improper interaction

with her even with actual notice of the wrongdoing;

c.    and the totality of circumstances involved in allowing the assaultive and improper acts of Defendants against Plaintiff, and failure to intervene and provide assistance from mental health professionals or other experts to analyze the best method to help Plaintiff and stop the assaults;

d.    taking no action to protect Plaintiff as a minor child;

e.    under all the circumstances and available resources, refusing to intervene and protect Plaintiff;

f.    Further, the Governmental Agencies involved and Defendants, by allowing the abuse of Plaintiff as a minor student, did through its policies, approvals, hiring, training and use thereof, maintained and condoned a custom and practice of depriving individuals such as Plaintiff, of their Constitutional rights by their traditions, policies, ordinances, statutes, manuals and actions promulgated by the Brewer School System and the agencies and Governments involved.

g.    The Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and right to equal protection of law as found in 42 USC §1983 and the rights secured to her by the United States Constitution and the Constitution and laws of the State of Maine, and conspired to inflict a wrong against and injury upon Plaintiff.

h.    Further, the Defendants and Government Agencies involved failed to issue or use widely accepted and other means by which to protect Plaintiff, a minor female student, including Law Enforcement, education professionals, parents, and others working directly with children/students, to protect Plaintiff from harm and in

accordance with accepted standards and protocols.

148.  Such errant policies and/or customs and practices of the Defendants were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights, and the Defendants, and each of them, are liable for all of the injuries sustained by Plaintiff, as set forth hereinabove.

149.  An objectively reasonable school officer, person working with children or Government official in each of the Defendants positions, would have understood that he/she was violating Plaintiff's clearly established Fourth and Fourteenth Amendment rights.

150.  The officers and officials conduct were so deficient that no reasonable person or official could have made the decision to allow the assaults of Plaintiff, under the circumstances.

151.  Each of the officers' acts and omissions before, during and after the assaults and activities, constitute a conspiracy against Plaintiff, and were malicious and outrageous, or were so outrageous that malice can be implied and considered more than a reckless disregard and deliberate indifference for Plaintiff; and Defendants knew of the dangers and protected themselves, rather than Plaintiff, all without adequate warning to her or her parents.

152.  As a direct and proximate result of the Defendants' assaultive acts of Plaintiff, she was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes, moves that that this Honorable Court will grant Judgment in her favor for compensatory damages of $5 million, and punitive damages of $10

million, against Defendants, including an award of attorneys' fees pursuant to 42 USC §1988, and award her any further relief it deems just and proper.

**Count II**
**(Conspiracy Under 42 USC §1985(3), 1986)**

153.   The Plaintiff alleges and re-alleges the allegations in paragraphs 1-152 of this Complaint as if set forth herein.

154.   The Defendants did, acting under the color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and rights to equal protection under law, as found in 42 USC §§1985(3), 1986, and the rights secured to her by the United States Constitution and the laws of the State of Maine.

155.   The actions of the school officers and Defendants, and their omissions, before, during and after the assaultive acts of Plaintiff's person, constituted a conspiracy against her in violation of 42 USC §1985(3), 1986.

156.   Further, any of the school officers and Defendants having knowledge that wrongs against Plaintiff were occurring, including §1985 violations, with power to prevent or aid against the wrongs, and neglecting to do so, are guilty of the violations as well.

157.   The school officials and Defendants knew that Plaintiff was a minor female student, and not capable of making informed choices, and that she was being coerced and/or threatened by Defendants, which a minor female student, required protection therefrom.

158.   As a direct and proximate result of the Defendants' assaultive acts of Plaintiff, she was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs,

loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes, moves that that this Honorable Court will grant Judgment in her favor for compensatory damages of $5 million, and punitive damages of $10 million, against Defendants, including an award of attorneys' fees pursuant to 42 USC §1988, and award her any further relief it deems just and proper.

<u>**Count III**</u>
**(Assault and Battery)**

159.   The Plaintiff alleges and re-alleges the allegations in paragraphs 1-158 of this Complaint as if set forth herein.

160.    The Defendant, Benjamin Pushard, assaulted Plaintiff without her consent or any valid basis therefore, by accosting her, physically assaulting her, detaining her improperly, prohibiting her from leaving of her own accord and bullying, and harassing her.

161.   The remaining Defendants had actual knowledge, or should have known, that Defendant B. Pushard was assaulting Plaintiff, all of whom had a duty to protect the Plaintiff and failed in this duty, which did put the Plaintiff in harm's way, therefore, all Defendants are proximately liable to the Plaintiff for any damages she incurred as a result of the sexual and emotional abuse she withstood at the hands of Defendant Benjamin Pushard.

162.   As a direct and proximate result of the abuse and actions against Plaintiff by Defendant B. Pushard, which occurred in the scope and course of his training, employment or contracting with the Brewer School System, conduct for which all Defendants are proximately liable for, Plaintiff has been seriously damaged and injured; Plaintiff's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset,

and humiliation, all of which will continue in the future.

**WHEREFORE,** the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count IV
### (Negligence)

163.   Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 162 as if fully set forth herein.

164.   Defendant Benjamin Pushard, owed a fiduciary duty, as well as a general duty of care, to Plaintiff, through his role of power and control over her, and negligently discharged his duty of care owed to her when he formed a relationship with her, emotionally and sexually, without her ability to consent, based on her age, or any valid basis therefore.

165.   The remaining Defendants owed Plaintiff a fiduciary duty as well as a general duty of care and negligently discharged that duty when they knew or should have known that Defendant B. Pushard was in an improper emotional and/or sexual relationship with Plaintiff, which did put the Plaintiff in harm's way, therefore, all Defendants are proximately liable to the Plaintiff for any damages she  incurred as a result of the actions of Defendant B. Pushard.

166.   As a direct and proximate result of the actions against Plaintiff by Defendant B. Pushard, which occurred in the scope and course of his training, employment and/or contracting with the Brewer School System, conduct for which all Defendants are proximately liable for, Plaintiff has been seriously damaged and injured; Plaintiff's reputation has been damaged as

well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE,** the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count V**</u>
<u>**(Title IX-Education Amendments of 1972-20 USC §§1681, et seq.)**</u>

167.   The Plaintiff repeats and re-alleges paragraphs 1 through 166 of this Complaint as fully set forth herein.

168.   The Defendant teacher/school employee sexually assaulted and harassed Plaintiff.

169.   The Defendant school officials, school employees or others, having direct oversight and control over Defendant B. Pushard, all having direct supervision over Plaintiff, were tasked with protecting Plaintiff in her capacity as a minor student of the BSS, had actual knowledge of the allegations by appropriate persons, including, but not limited to, the school principal, whose response to those allegations were so deficient and/or non-existent, that demonstrates deliberate interference to Plaintiff's rights and protections.

170.   The misconduct against Plaintiff was so severe, pervasive and objectionably offensive, that it denied her as the victim of equal access to educational opportunities or benefits, and substantial personal injuries.

171.   The Defendants actually knew or should have known of the pervasive, serious and ongoing sexual assaults and harassment of Plaintiff by Defendants, including attempts to cover-up the wrongdoing and protect the Defendants from liability.

172.   The Defendants knew that the misconduct occurred on and off school campus property, yet did nothing to protect Plaintiff from the ongoing harm.

173.   The acts of Defendants violate Title IX of the Education Amendment of 1972 (Title IX), 20 USC §§1681, et seq., and for the Defendants' response to protect Plaintiff which amounts to deliberate indifference to the harassment and abuse, and for that clearly unreasonable response.

174.   As a direct and proximate  result of the actions against Plaintiff by Defendants, Plaintiff has been seriously damaged and injured; Plaintiff's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

   **WHEREFORE**, the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count VI**</u>
**(Negligent Hiring, Training, Supervision and Retention)**

175.    The Plaintiff repeats and re-alleges paragraphs 1 through 174 of this Complaint as fully set forth herein.

176.   The Defendants were negligent in the hiring, training, supervision and retention of Defendant Benjamin Pushard, and Defendant Morgan Small, and violated their duty of care to Plaintiff, particularly considering the special relationship between the Defendants and Plaintiff as a student in the Brewer School System, and breached that duty of care, proximately causing damages and injuries to Plaintiff, as noted.

177.  The Defendants Patrick Healy and Healy Chiropractic, LLC, were negligent in the hiring, training, supervision and retention of Defendant Benjamin Pushard and violated their duty of care to Plaintiff, particularly considering the special relationship between the Defendants and Plaintiff as a student in Brewer School System, and breached that duty of care, proximately causing damages and injuries to Plaintiff, as noted.

178.  As a direct and proximate result of the actions against Plaintiff by Defendants, Plaintiff has been seriously damaged and injured; Plaintiff's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE**, the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count VII**</u>
**(Negligent Infliction of Emotional Distress- NIED)**

179.  The Plaintiff repeats and re-alleges paragraphs 1 through 178 of this Complaint as though fully set forth herein.

180.  The actions of all Defendants were so offensive, vile, malicious and directed at Plaintiff to injure her that she suffered emotional distress that a reasonable person could be expected to be harmed, and her privacy was so invaded, she became ill, her injuries will continue into the future and Defendants knew or should have known Plaintiff would be so affected by their misconduct.

181.  As a direct and proximate result of the abuse of Plaintiff by Defendants, Plaintiff has been

seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count VIII
### (Intentional Infliction of Emotional Distress - IIED)

182. The Plaintiff repeats and re-alleges paragraphs 1 through 181 of this Complaint as though fully set forth herein.

183. The actions of Defendants were so offensive, vile, malicious and directed at Plaintiff to injure her that she suffered emotional distress that a reasonable person could be expected to be harmed, and her privacy was so invaded, she became ill, her injuries will continue into the future and Defendants knew or should have known Plaintiff would be so affected by their misconduct.

184. The Defendants, by their extreme and outrageous conduct against Plaintiff, did intentionally or recklessly cause severe emotional distress to Plaintiff including times when they were inflicting bodily harm or threats to her, and it was certain or substantially certain that such distress would result.

185. The conduct of Defendants was so extreme and outrageous as to exceed all bounds of decency and it must be regarded as atrocious and utterly intolerable in a civilized society.

186. The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to tolerate it.

187.   As a direct and proximate result of the abuse of Plaintiff by Defendants, Plaintiff has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count IX**</u>
**(Interference with Maine Civil Rights, 5 M.R.S.A. §4682)**

188.   Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 187 as if fully set forth herein.

189.   Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and right to equal protection under the law, and the rights secured to her by the Constitution and the Laws of the State of Maine and conspired to inflict a wrong against and injury upon the Plaintiff and for violations of 5 M.R.S.A. §4682.

190.   The Defendants intentionally interfered or attempted to intentionally interfere by physical force or violence against Plaintiff or by threat of physical force or violence against her, with the exercise or enjoyment of her rights secured by the United States and Maine Constitutions, whose exercise or enjoyment of those rights was interfered with or attempted to be interfered with.

191.   As a direct and proximate result of the Defendants' assaultive acts or threats against Plaintiff, she was deprived of the rights, privileges and immunities secured by the United

States Constitution and the Maine Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, and a deprivation of her rights, all of which will continue in the future.

**WHEREFORE,** the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count X**</u>
**(Invasion of Privacy)**

192.   The Plaintiff repeats and re-alleges paragraphs 1 to 191 of this Complaint as though fully set forth herein.

193.   The Defendant Benjamin Pushard, assaulted Plaintiff without her consent or a valid basis therefore by accosting her, physically assaulting her, detaining her improperly and demanding she participate in sexual conduct with him, prohibiting her from leaving of her own accord and bullying, harassing and assault, and invading her privacy, including through the recording of sexual videos and photographs.

194.   The Defendants are vicariously liable to the Plaintiff in damages she incurred by the actions of Defendant Benjamin Pushard.

195.   As a direct and proximate result of the Defendants' assaultive acts of Plaintiff, she was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain

and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

**WHEREFORE**, the Plaintiff moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Demand for a Jury Trial

Plaintiff hereby demands a Trial by Jury, pursuant to F.R. Civ. P. 38(b), on all counts in the above captioned matter.

Dated at Bangor, Maine
May 10, 2021

      _/s/ Ezra A. R. Willey_____
Ezra A. R. Willey, Esq. (#5025)
Attorney for Plaintiff
WILLEY LAW OFFICES
15 Columbia St., Ste. 501
P. O. Box 924
Bangor, ME 04402-0924