## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| LIBBY HEWES )<br><br>)<br><br>)<br>Plaintiff )<br>vs. )<br><br>)<br>BENJAMIN PUSHARD, in his Personal )<br>and Professional Capacity as an Employee/ )<br>Contractor / Intern / Agent with the )<br>Brewer School Dept., )<br><br>)<br>GREGG PALMER, in his )<br>Professional Capacity as Superintendent, )<br>of the Brewer School Department, )<br><br>)<br>GRETCHEN GARDINER, in her )<br>Professional Capacity as Title IX )<br>Coordinator / Affirmative Action Officer )<br>for the Brewer School Department, )<br><br>)<br>SAMANTHA PANGBURN, in her )<br>Personal and Professional Capacity as )<br>Principal of Brewer High School, )<br><br>)<br>MORGAN SMALL, in her Personal )<br>and Professional Capacity as Coach/ )<br>Employee with Brewer School Department, )<br><br>)<br>BREWER SCHOOL DEPARTMENT, )<br><br>)<br>PHILLIP PUSHARD, )<br><br>)<br>JACQUELINE PUSHARD, )<br><br>)<br>MATTHEW PUSHARD, )<br><br>)<br>PATRICK HEALY, in his Personal and )<br>Professional Capacity as Owner and )<br>Principal of Healy Chiropractic, )<br><br>) | DOCKET NO.: 1:21-cv-00125-DBH |

Page 1 of 56

HEALY CHIROPRACTIC, LLC,     )
     )
     and     )
     )
Officer John/Jane Doe, in his/her     )
Personal and Professional Capacity as     )
Officer, Brewer Police Department,     )
     )
     Defendants     )

### AMENDED COMPLAINT
### (WITH DEMAND FOR JURY TRIAL)

### Introduction

This case arises out of the repeated sexual abuse of a child, Libby Hewes, by Benjamin Pushard, a trainer who coached Libby, was employed by the Brewer School Department and worked at Brewer High School where Libby was a student. Libby was raped and sexually abused by Pushard hundreds of times, over the course of two years, beginning when she was only thirteen years-old. This lawsuit alleges, *inter alia*, that the school district and many individuals unlawfully failed to protect Libby from harm, in violation of her rights.

### Jurisdiction and Venue

1.     Jurisdiction is proper because Plaintiff is a resident of Penobscot County, Maine, and the Defendants are residents and/or entities of the State of Maine, or availed themselves of jurisdiction of this Court due to the substantial actions taken in Maine, over a Maine resident, in the above captioned matter.

2.     Venue is proper as the Plaintiff is a resident of Penobscot County, Maine.

### Parties

3.     Plaintiff, Libby Hewes, is a resident of Brewer, Maine.

4. At all times mentioned herein, Defendant B. Pushard, an individual, was duly appointed and acting as a trainee, intern, employee, agent and/or contractor with and through Brewer High School (hereinafter BHS) and/or the Brewer School Department (hereinafter BSD), Healy Chiropractic, LLC, and Patrick Healy, and was, at all material times herein, acting under the color of state and federal law and in his capacity as trainee, employee and/or contractor with BHS and/or BSD, had oversight and control of all students that he was directly involved with or had knowledge of; Defendant B. Pushard is sued in his personal and professional capacity.

5. At all times mentioned herein, Defendant Palmer, an individual, was duly appointed and acting as Superintendent, or otherwise in an administrative position with and through BHS/BSD, or has, through his appointment as Superintendent, subsumed responsibility and liability of his predecessors, and was, at all material times herein, acting under the color of state and federal law and in her capacity as an administrator with BHS and/or BSD, had oversight and control of all students, employees, coaches, interns, agents and/or contractors at BHS/BSD or involved with BHS/BSD, as well as responsibility for development and implementation of Title IX and Affirmative Action plans and policies; Defendant Palmer is sued in his professional capacity.

6. At all times mentioned herein, Defendant Gardiner, an individual, was duly appointed and acting as Title IX / Affirmative Action Officer for the Brewer School Department, or otherwise in an administrative position with and through BHS/BSD, or has, through her appointment as Title IX / Affirmative Action Officer, subsumed responsibility and liability of her predecessors, and was, at all material times herein, acting under the color of state and federal law and in her capacity as an administrator with BHS and/or BSD, had oversight and

control of all students, employees, coaches, interns, agents and/or contractors at BHS/BSD or involved with BHS/BSD, as well as responsibility for development and implementation of Title IX and Affirmative Action plans and policies; Defendant Gardiner is sued in her professional capacity.

7.   At all times mentioned herein, Defendant Pangburn, an individual, was duly appointed and acting as Principal, or otherwise in an administrative position with and through BHS/BSD, and was, at all material times herein, acting under the color of state and federal law and in her capacity as an administrator with BHS and/or BSD, had oversight and control of all students, employees, coaches and/or contractors at BHS/BSD or involved with BHS/BSS; Defendant Pangburn is sued in her personal and professional capacity.

8.   At all times mentioned herein, Defendant Small, an individual, was duly appointed and acting as Coach of the Brewer High School Junior Varsity Softball Team, or otherwise in a position having direct oversight of students involved with the Brewer School System generally and was, at all material times herein, acting under the color of state and federal law and in her capacity as a coach with BHS/BSD, had oversight and control of all students who were directly involved with her or who she had direct knowledge of; Defendant Small is sued in her personal and professional capacity.

9.   At all times herein, Defendant Brewer School Department, had complete control and oversight of every student enrolled within it as well as every administrator, employee, contractor, trainee, intern, agent or other adult figure coming into contact with any students enrolled within it; acting under the color of state and federal law, Brewer School Systems principal place of business is in Brewer, Maine and it is sued in its professional capacity.

10.  At all times herein, Defendant P. Pushard, a resident of Brewer, Maine and former State Trooper, the father of Defendant B. Pushard, was acting under the color of state and federal law and is sued in his personal capacity.

11.  At all times herein, Defendant J. Pushard, a resident of Brewer, Maine, the mother of Defendant B. Pushard, was acting under the color of state and federal law and is sued in her personal capacity.

12.  At all times herein, Defendant M. Pushard, a resident of Brewer, Maine, the brother of Defendant B. Pushard, was acting under the color of state and federal law and is sued in his personal capacity.

13.  At all times herein, Defendant Healy, owner of Healy Chiropractic, LLC, of Brewer, Maine, was acting under the color of state and federal law and is sued in his personal and professional capacity.

14.  At all times herein, Defendant Healy Chiropractic, LLC, acting under the color of state and federal law, with a principal place of business is in Brewer, Maine, is sued in its professional capacity.

15.  At all times herein, Officer John/Jane Doe, an employee of the Brewer Police Department, was acting under the color of state and federal law and is sued in his/her personal and professional capacity.

## General Allegations

16.  Defendant B. Pushard raped and otherwise sexually assaulted Libby, through oral and digital penetration of her, as well as insertion of his penis into her vagina, all of which was the result of his significant psychological manipulation and grooming of her, when she was between the ages of 13 and 15 years old; Libby was born on May 11, 2001.

17.    Defendant B. Pushard was, at all times therein, an adult, between the ages of 20 and 22 years old, in a supervisory capacity over Libby, who was a student and a minor at all times; Defendant B. Pushard was born on December 15, 1994.

18.    Defendant B. Pushard was employed by, or through Defendant Brewer School Department and/or Defendant Healy Chiropractic, LLC, in the capacity as an intern, employee, agent or representative, and was directly overseen by Defendants Pangburn and/or Healy.

19.    Defendant B. Pushard, both during school hours and after school hours, as well as on school grounds and off school grounds, raped and otherwise sexually assaulted Libby, when she was a minor student, through oral penetration, digital penetration, penetration by penis, as well as sexually assaulting Libby in front of another female minor student.

20.    Defendant B. Pushard photographed and video recorded his rapes and sexual assaults of Libby, and further sent Libby sexually explicit written messages, both through various social media applications, as well as through her Brewer School System issued email account.

21.    Defendant B. Pushard psychologically manipulated Libby into fearing for his well-being by repeatedly telling her that he would be arrested and in trouble if anyone found out that he was raping and sexually assaulting her; Libby went through serious emotional turmoil as a result and took great pains to protect her abuser based on the psychological manipulation.

22.    The predatory nature of Defendant B. Pushard and his sexual assaults of Libby were widely known within the community, especially so within the Brewer school community, among students and faculty, alike; all Defendants failed to protect Libby from the Defendant B. Pushard.

**Factual History**

23. Beginning in approximately April, 2014, Libby was struggling with her mental health due to the pressures of being a young, teenage girl, in the twenty-first century.

24. Libby had an established relationship with Defendant Small and looked up to her; Libby began to share her personal thoughts and struggles with Defendant Small on a daily basis.

25. These conversations were through text messages and occasionally Snapchat.

26. These conversations between Libby and Defendant Small continued for approximately eight (8) months (regarding Libby's mental health and the struggles she had daily); Defendant Small never told any authorities at Libby's school or relayed any information to Libby's parents; Defendant Small was an adult and a coach at and/or through the Brewer School Department (the Brewer Community School and the Brewer High School) at that time and all times thereafter.

27. Beginning in approximately December, 2014, Defendant Small would periodically talk about a person she dated in high school and went to prom with, with Libby; this person was Defendant B. Pushard.

28. Defendant Small would talk about how she still had feelings for Defendant B. Pushard even though he did not like her back; Defendant Small was having these inappropriate conversations with a young student.

29. Defendant Small would disclose personal information to Libby about her prior relationship with Defendant B. Pushard, such as how she and Defendant B. Pushard only held hands and slow danced to one song at prom and also that they got a picture together and he put his arm around her.

30. During this same general time frame, Defendant Small told Libby that Defendant B. Pushard was a really helpful and kind person and could possibly help Libby with her mental health; notwithstanding that he was not a mental health professional.

31. Based on Defendant Small's insistence, Libby became friends with Defendant B. Pushard on Snapchat and started talking strictly about mental health, school, and struggles; no flirting had begun yet.

32. Defendant B. Pushard was, at all times, working for the Brewer School System either as a student trainee, intern, employee, agent and/or a contractor, whether directly or by and through Healy Chiropractic, LLC, and/or Patrick Healy.

33. The Snapchatting between Libby and B. Pushard went on for a few months, however, Libby attempted to talk with Defendant Small about Defendant B. Pushard, but Defendant Small would not make herself available to Libby; Libby felt she had no other outlet other than Defendant B. Pushard.

34. In approximately January, 2015, Libby and Defendant B. Pushard were both planning to attend a BHS hockey game and Defendant B. Pushard offered to drive Libby home after the game.

35. Libby informed her sister that she would not need a ride home as she had an alternate ride; the ride home was with Defendant B. Pushard.

36. While at the game, Libby and B. Pushard were talking on Snapchat and Defendant B. Pushard instructed Libby to meet him at his red jeep in the parking lot.

37. Defendant B. Pushard did not walk out of the Penobscot Ice Arena with Libby, as he knew it would be inaproiate being seen with someone so much younger; Libby was thirteen (13) years old at the time.

38.   Libby got into the passenger's seat of the jeep and remembers it being very cold; Defendant B. Pushard told Libby that his jeep takes a while to heat up.

39.   Defendant B. Pushard drove Libby down the Acme road and had limited conversation but turned up the song "Somebody like you", by Keith Urban, very loudly and singing along, and Libby felt awkward and shy and uncomfortable; Libby was dropped off at home.

40.   Libby and B. Pushard continued Snapchatting and talking about mental health; however, "flirting" (psychological manipulation of Libby), began shortly after the initial in person meeting after the hockey game.

41.   During approximately February and March, 2015, Snapchat and Twitter conversations continued between the Libby and Defendant B. Pushard.

42.   Defendant B. Pushard's psychological manipulation of Libby, which she took as flirting due to her tender age, began during these months and continued into Libby's spring softball season; this was during Libby's 8th grade year.

43.   In approximately the beginning of April 2015, and all throughout the month, the relationship between Libby and Defendant B. Pushard went from conversations and fantasies, to actual physical assaults.

44.   During this period of time, Defendant B. Pushard digitally and orally penetrated Libby numerous times; Libby was 13 years old at the time and was playing on the "A" team for Brewer Community School.

45.   Brielle Dickinson, Libby's best friend at the time, was made aware about the so-called relationship, by Plaintiff.

46.   Soon after, Libby Facetimed Defendant B. Pushard and Defendant B. Pushard sang the song "Never Stop" to Libby, in front of Brielle.

47.   Brielle thought it was cute and Libby didn't think anything was wrong with it at the time, due to Defendant B. Pushard's psychological manipulation of her.

48.   That became "their song" according to Defendant B. Pushard.

49.   Defendant B. Pushard began kissing Libby during the month of April, 2015; the oral contact took place in Defendant B. Pushard's jeep in the St. Joseph's Church parking lot.

50.   During this same approximate time period, Defendant B. Pushard put his mouth on Libby's genitals and had her put her mouth on his genitals.

51.   Also, during this same approximate time period, Libby got a ride home from Defendant Pushard after softball practice; Libby walked up to Coffin Field, located directly behind Brewer High School, from the Brewer Motor Inn, which is located next to the Heddericg Baseball Field, which is in close proximity to Coffin Field, and was seen by the BHS JV softball team, who were practicing on Coffin field at the same time.

52.   Libby was, thereafter, questioned by her coach, Danielle McDonough, a couple of days later, about the ride.

53.   Coach McDonough told Libby that she "heard about the ride from somebody who saw it first hand, in the Hannaford parking lot"; Coach McDonough expressed her concern and mentioned she would be talking with Libby's parents if this were to happen again.

54.   To the best of Libby's recollection, Coach McDonough did not have a conversation with Libby's parents expressing her concern nor did she report anything to school administrators.

55.   On information and belief, Defendant Small, as well as another adult, Sarah Estes, was/were aware of the ride, and the majority of her team, the BHS JV softball team saw Defendant B. Pushard give Libby a ride.

56.   At no time did any adults involved contact the school or any administrators to voice concern.

57.   During April, 2015, the following, specific contact occurred between Libby and B. Pushard:

    a.    April 6th: Libby rubbed her hands on/between Defendant Pushard's legs.

    b.    April 11th: Defendant B. Pushard devised a plan for Libby and Brielle to go with him for a ride in his Jeep; Defendant B. Pushard packed blankets and pillows for the back seat; The three of them plan to meet up, and Defendant B. Pushard took the girls to a location where he parked his Jeep; Brielle sat in the front seat while Defendant B. Pushard sexually assaulted Libby through actions such as, placing his mouth on her genitals and putting his fingers inside her vagina, as well as kissing Libby's neck, in the backseat; Defendant B. Pushard had not agreed to "kiss" Libby yet, as he still wanted to wait until she was 18, as he stated "the lips are off-limits"; Brielle was on her phone in the front seat with headphones on during this interaction; Libby and Brielle both thought this was completely okay and normal; Thereafter, Defendant B. Pushard sent messages to Libby over Snapchat where he spoke about digitally penetrating Libby and also vulgar descriptions about Libby's genitalia.

    c.    April 15th: Defendant B. Pushard kissed Libby in his Jeep in the St. Joseph's Church parking lot in Brewer; this was the first kiss on the lips between Defendant B. Pushard and Libby; Libby was thirteen (13) years old at the time.

    d.    Between April 15th and April 24th: Defendant B. Pushard instructed both Libby and Brielle to delete images of him that were on each of their phones, because

Defendant B. Pushard was concerned he would get in trouble if anybody saw them.

e.   Libby thereafter asked Defendant B. Pushard "If I were to post this picture when I turned 18, would you still get arrested?", to which Defendant B. Pushard replied with "yes."

f.   April 24th: Defendant B. Pushard digitally penetrated Libby.

g.   April 26th: Defendant B. Pushard put his mouth on Libby's vagina, and, thereafter, through Snapchat, he went into explicit detail about each thing he did to Libby while orally penetrating her vagina earlier that day; Defendant B. Pushard wrote to Libby that "When I went home I couldn't stop smiling, it was the best thing ever in my life.", recounting his sexual assault on her.

58.   During approximately May, 2015, the sexual assaults continue to progress between Defendant B. Pushard and Libby; they became more frequent, Libby began lying to her parents more often about going for walks and going on runs, based on Defendant B. Pushard's psychological manipulation of her; the conversations between Libby and Defendant B. Pushard began transitioning to discussions about Defendant B. Pushard penetrating Libby with his penis.

59.   Defendant B. Pushard was approximately 20 ½ years old at this time.

60.   However, Defendant was hesitant about raping Libby, as he did not want to get caught "having sex" with a 13/14-year-old, despite the prior sexual assaults that had occurred.

61.   On approximately May 3, 2015, Libby walked to St Joseph's Church and Defendant B. Pushard transported her in the trunk of his vehicle, to his parent's house on Starlight Drive in Brewer, where he was residing.

62.  Defendant B. Pushard drove into the garage and shut the garage door before Libby was allowed to get out of the vehicle.

63.  Defendant B. Pushard then uncovered Libby from the blankets he had covered her with.

64.  Plaintiff was instructed to crawl through Defendant B. Pushard's kitchen as he wouldn't shut all of the curtains, so none of his neighbors saw Libby.

65.  Defendant B. Pushard took Libby upstairs to his room and they laid in his bed; Defendant B. Pushard kept his boxers on and rubbed himself against Libby.

66.  A couple of days later, Defendant B. Pushard contacted Libby via Snapchat and asked her to "ease his mind", as he was concerned that he impregnated Libby, notwithstanding that he did not penetrate Libby with his penis, and also that he *did not* ejaculate.

67.  Defendant B. Pushard instructed Libby to take a pregnancy test to calm his nerves.

68.  Libby took a pregnancy test at her friend Brielle's house and it was negative; Libby had never taken a pregnancy test prior to this and she was very scared; Defendant B. Pushard put false information and worries into her head at such a young age.

69.  Libby was 13 years old at the time she took her first pregnancy test and Defendant B. Pushard was 20 years old at the time.

70.  On approximately May 17, 2015, Defendant B. Pushard sent a message to Libby whereby he stated that "I love your boobs right now."; Due to the psychological manipulation, Libby responded, "I want them big.", Defendant B. Pushard then replied, "I want them big too."; Libby's breasts were still developing as she was in the early stages of puberty.

71.  Libby had just turned fourteen (14) at the time of this conversation.

72.  On approximately May 19, 2015, Libby and Defendant B. Pushard were communicating through Snapchat and "fantasizing about the first time they would have sex."

73. Libby explained it was going to be very painful since she was very young, and Defendant B. Pushard said "not to worry and he would take it slow and make sure Libby would enjoy it."

74. Libby and Defendant discussed anal sex and Libby asked if Defendant B. Pushard would want that, to which Defendant B. Pushard said that he would accept anal sex, but that "Your vagina is what I really want to stick my dick into."

75. Because of the psychological manipulation by Defendant B. Pushard, Libby, being so young, wanted to "please" Defendant B. Pushard.

76. On approximately May 25th 2015, Defendant B. Pushard asked Libby to be his girlfriend, which constitutes further psychological manipulation of Libby.

77. On approximately June 2, 2015, the conversations about Defendant B. Pushard penetrating Libby with his penis increased and Defendant B. Pushard stated that "It will be when we both know you can be out without being restricted on how much time you have so we can enjoy it, I'll bring paper towels."

78. Defendant B. Pushard began to become controlling over Libby and he would regularly instruct Libby to block certain people on social media that she went to school with.

79. On approximately June 6, 2015, Defendant B. Pushard penetrated Libby's vagina with his penis for the first time; this occurred at the Penobscot County Conservation Association, a/k/a the Conservation Club.

80. Defendant B. Pushard put two rubber gloves on his penis as "protection," to prevent Libby from getting pregnant; the rape lasted no longer than 3 minutes and took place in the passenger seat of Defendant B. Pushard's red Jeep.

81. After it was over, Defendant B. Pushard was very nervous that he got Libby pregnant and again wanted her to take a test just in case.

82. Defendant B. Pushard also asked Libby if she would take a Plan B pill; on information and belief, Defendant B. Pushard paid for the pill and Libby took it.

83. A couple of days later Defendant B. Pushard planned to penetrate Libby's vagina with his penis again; he again wore two rubber gloves that he took from his mother's stash in the garage of his family home; this second incident also occurred at the Conservation Club.

84. Defendant B. Pushard would bring rubber gloves that belonged to his mother, as she worked in the ICU and would oftentimes have extras and would bring them home and leave them in the garage; Defendant B. Pushard decided it was safer to use rubber gloves rather than a condom, to prevent Libby from getting pregnant, he would also use them to digitally penetrate Libby, if and when, she was on her period; Libby was between the ages of fourteen (14) and fifteen (15) and Defendant B. Pushard was approximately between the ages of twenty one (21) and twenty two (22) when this would occur.

85. Throughout the month of June there were frequent "meetups" between Libby and Defendant B. Pushard; Brielle would also be included in some of these meetings.

86. By July, 2015, Defendant B. Pushard had convinced Libby that they were "dating", due to the psychological manipulation, and Libby was being raped and sexually assaulted on a daily basis.

87. On one occasion, Libby, Defendant B. Pushard and Brielle, attended a movie at the "cheap seats", now known as the Westside Cinemas, located on the Odlin Road in Bangor, Maine (Defendant B. Pushard wanted to go to the cheap seats because he did not want to be seen at the Bangor Cinema with Libby and Brielle as both girls were

underage), during which Defendant B. Pushard touched Libby between her legs with his hands and also digitally penetrated her, while Brielle was sitting on the other side of Libby.

88.  Multiple sexual assaults took place on the school grounds as well, including, but not limited to, during school hours. On one occasion, Defendant B. Pushard communicated with Libby, during the school day, to meet him in the school's bathroom so that he could commit a sexual assault/rape on Libby.

89.  Many communications between Defendant B. Pushard and Libby were through the Brewer School Department's email system provided to all students, teachers and staff, for the purpose of school related communications; these emails, on information and belief, are supposed to be monitored by the school to look for improper conversations and communications through that school email platform.

90.  The Brewer School Department monitors all email accounts provided to students, faculty, staff, or any other person, or has the capacity and ability to monitor these email accounts and communications flowing through them, and, in fact, has a stated policy notifying all users of those emails to this monitoring; the Brewer School Department failed to monitor Libby's email account (Defendant B. Pushard would email Libby on her school issued email account from his personal account), allowing Defendant B. Pushard to use that email platform to carry out his continued psychological manipulation of Libby, as well as his continued sexual assaults and rapes of her.

91.  Anytime Defendant B. Pushard would transport Libby to his parent's home on Starlight Drive in Brewer, he would bring blankets and put Libby in his trunk and cover her so that

if he was stopped by any law enforcement, he would not be seen with a minor in his vehicle; this would also be done with Brielle, whenever she was brought along.

92. During the month of December, 2015, and continuing on until later months, the tension between Libby and Defendant B. Pushard increased, as he began feeling very jealous towards people Libby went to school with and did not like certain guy friends she would be around.

93. Libby was approximately 14-15 years old during this period and Defendant B. Pushard was approximately 21-22 years old during this period of time.

94. Defendant B. Pushard restricted Libby from having relationships with anybody her own age other than Brielle.

95. On approximately May 25, 2016, Libby and Defendant "celebrated" a year anniversary as a "couple"; the sexual assaults/rapes would continue at the Conservation Club and the church and Libby would go to Defendant B. Pushard's parent's house a lot more often, via his trunk.

96. During Libby's Sophomore year of high school, when she was between the ages of fourteen (14) and fifteen (15), serious rumors started to go around the school about Libby's and Defendant's "relationship"; the fact that Defendant B. Pushard was "involved" with a minor child in a sexual manner was widely known throughout the Brewer School Community, both with students and faculty/staff.

97. In approximately April, 2017, Libby was in the gym for class, and a classmate, Nate Laskey, made a comment to Libby about how she should go f*** her 22-year-old boyfriend.

98. Nate Lasky was referring to Defendant B. Pushard.

99.  Libby, very upset and distraught, immediately went to the office and asked to speak with the Principal, Defendant Pangburn.

100.  Libby sat down with Defendant Pangburn and explained her "concerns" about the "rumors" that were going around regarding Libby and Defendant B. Pushard; due to the serious and deep psychological manipulation of her, Libby was afraid that Defendant B. Pushard would be caught and arrested.

101.  Libby explained that other students were talking about herself and Defendant B. Pushard having a sexual relationship.

102.  Plaintiff further told Defendant Pangburn that she did not know Defendant B. Pushard very well and that she, Libby, wasn't sure why the rumors were happening.

103.  Defendant Pangburn told Libby that she would "keep an ear out" and if she heard anything she would squash the rumors if she were to hear any; Defendant Pangburn did not inquire further of Libby at all, notwithstanding the fact that Libby, being a young, high school female, was reporting allegations of harassment of herself, by other students, and that the information being reported concerned alleged sexual assaults of a student by a teacher.

104.  Defendant Pangburn did not take what Libby said any further and it ended in her office, notwithstanding that Defendant Pangburn was responsible for looking into why the rumors were happening, further documenting the issue, conducting an investigation (even on a minimal basis), etc., but took no action; Defendant Pangburn took no steps to determine whether Libby was, in fact, being abused by Defendant B. Pushard.

105.  The Brewer School Department's Affirmative Action Plan was not implemented by Defendant Pangburn, as required.

106. As noted in Complaint Attachment 1, attached hereto and incorporated by reference, as if originally stated herein, the Brewer School Department's Affirmative Action Plan claims to protect students from discrimination based on sex, including but not limited to, sexual assaults, as well as from hazing, defined broadly as bullying.

107. Pursuant to the BSD Affirmative Action Plan, "Notice of the contents of the Affirmative Action Plan shall be provided to all employees and students at the beginning of each school year by means chosen by the Superintendent." *See* Complaint Attachment 1, Section II. A.

108. Plaintiff has no recollection of the Affirmative Action Policy ever being distributed to students in a manner that the students were aware of it as well as their rights under it; the "means" of dissemination chosen by the Superintendent were legally deficient to provide notice to the students.

109. Implementation of the BSD's Affirmative Action Plan was the responsibility of Defendant Gardiner, who reports to the Superintendent, the ultimate custodian of student's rights and safety.

110. Defendant Gardiner, and Defendant Palmer, failed to fulfill the following obligations required of them:

   a. "Managing the organization and implementation of the Affirmative Action Plan;" *See id.* at Section IV. B. 1.

   b. "Disseminating the required notices, policies and information regarding federal and state anti-discrimination laws to employees, applicants, students and parents, and others, where applicable;" *See id.* at Section IV. B. 2.

    c.    "Maintaining records, reports and documents required to comply with federal and state recordkeeping requirements;" *See id.* at Section IV. B. 3.

    d.    "Coordinating Brewer School Department's efforts to comply with and carry out its responsibilities under all applicable federal and state anti-discrimination laws (including serving as the Title IX/ADA/Section 504/Age Discrimination Coordinator as required by those laws);" *See id.* at Section IV. B. 4.

    e.    "Conducting and/or coordinating the investigation of discrimination complaints based on race, age, color, ancestry or national origin, religion, sexual orientation, sex, genetic information, or physical or mental disability;" *See id.* at Section IV. B. 5.

    f.    "Reporting to the Superintendent when necessary [*sic*] any findings and recommendations for ensuring compliance with the Affirmative Action Plan;" *See id.* at Section IV. B. 6.

111.    As required through the Plan's Appendix C, the policy pertaining to "Harassment and Sexual Harassment of Students", both *oral harassment* and *sexual abuse* of Libby, based on her being a female student, was and remains to be prohibited conduct. *See id.* at Appendix C.

112.    The report that Libby made to Defendant Pangburn *required* Defendant Pangburn to, at the minimum, investigate the rumors, which constitute harassment of Libby based on her gender, by other students and, which on its face, rose to the minimum level of the *possibility* of sexual abuse of a female minor by a school employee/agent, also requiring further investigation. *See id*.

113.   As stated in the Policy, "A 'Complaint' is defined as an ***allegation*** *that a student has been discriminated against or harassed* on the basis of . . .sex . . . ." *See id* at Appendix C Definitions (internal quotation marks altered, emphasis and bolding added).

114.   Libby's statement to the principal *was a report of alleged harassment* of her, by other students, at a minimum, that required investigation. *See id. generally*.

115.   Had Defendant Pangburn investigated the harassment of Libby by other students, the sexual abuse of Libby, by Defendant B. Pushard, would have been discovered; Defendant Pangburn failed to perform her duties under the Plan.

116.   As noted in Appendix C, "The Superintendent or the employees designated as the Title IX Coordinator or Affirmative Action Officer ***will investigate*** complaints of harassment in accordance with the Student Discrimination and Harassment Complaint Procedure. School employees, students, and parents shall be informed of this policy/procedure through handbooks and/or other means selected by the school administration." *Id.* (Bolding and emphasis added).

117.   As further noted in Appendix C, when school staff knows of incidents of abuse or harassment, they are mandated to report that abuse/harassment to the Superintendent or his designee, none of which occurred here. *See id.* at "How to Make a Complaint" Part B.

118.   Tracy Goodrich, the secretary to the Athletic Director, David Utterback, who is also the mother of a student colleague of Libby's, Jordan Goodrich, knew of the so-called "rumors"; Jordan has told other students that her mother knew of the rumors going around the school that Defendant B. Pushard was in an illegal relationship with Libby, at the time Libby was a minor student and she was being raped by Defendant B. Pushard, and she did not report it.

119. Defendant Small knew Defendant B. Pushard's illegal relationship with Libby and she did not report it.

120. Coach Danielle McDonough knew or should have known of Defendant B. Pushard's illegal relationship with Libby and she did not report it.

121. No such investigation was done and Libby continued to be sexually assaulted and raped by Defendant B. Pushard, as well as harassed and intimidated by her fellow students, because of Defendant B. Pushard's psychological manipulation and physical, mental and emotional abuse of her.

122. Defendant Brewer School Department's Affirmative Action Plan is illegal and/or illegal as applied to Libby.

   a.   For example, the Policy sets forth a higher standard for gender based sexual harassment of students, as opposed to general discrimination and harassment of students, requiring that sexual harassment "*actually interfere with a student's education.*" *Compare id.* Appendix C, pg. 14, Sexual Harassment Definition *with* Appendix C (cont.), pg. 16, Discrimination or Harassment Definitions.

   b.   The Policy *does not* reference the Maine Constitution.

   c.   The Policy *does not* have differing rules or policies when a teacher or other person of power over a student commits an offense against a student, as Federal Law implements different standards in those situations.

   d.   The Policy *does not* state, anywhere, that "separate" and "different" treatment "based on sex" is prohibited.

   e.   The policy fails to notify students that sexual contact between a school employee/agent and a student of *any age* is prohibited.

123.  In the event that the Policy is not illegal, Defendants Brewer School Department, Palmer, Gardiner and Pangburn all failed to train, disseminate or otherwise implement the Policy generally and/or as applied to Libby.

124.  The Brewer School Department has policies and procedures in place to monitor student and staff emails, and Defendant Pangburn did not review Libby's emails to see if the two were in communication with each other on that platform, which they were. *See* Brewer School Department Policy: IJNDB, Student Electronic Device and Network Use ("The school unit department reserves the right to monitor all computer and Internet activity by students. Students have no expectation of privacy in their use of school computers.")

125.  Students are told that their computer usage may be monitored and can be monitored and this also extends to usage of school issues email addresses; Defendant Brewer School Department failed to perform its protective duties and allowed Defendant B. Pushard to use Libby's school email address for his illegal activity.

126.  Defendant Pangburn did not speak to any other students who were spreading "rumors", including, but not limited to Nate Lasky.

127.  Defendant Pangburn did not speak to Defendant B. Pushard to ask him if he had heard of the rumors and to inquire further of him.

128.  Defendant Pangburn took no action, allowing the sexual assaults and rapes to continue.

129.  In fact, Defendant Pangburn met with Tracy Goodrich after Libby made her report to Defendant Pangburn and discussed the "rumors" with Tracy; on information and belief, Tracy told Defendant Pangburn that Defendant B. Pushard would never do anything like that as she knew him personally.

130. After Libby made the report to Defendant Pangburn, Defendant Pangburn "added" Libby as a friend/contact on Snapchat and communicated with her via that social media platform up until recently, when Defendant Pangburn removed Libby as a friend/contact after notice of the above captioned matter was provided; the initial contact from Defendant Pangburn to Libby, on social media, occurred while Libby was a minor student and Defendant Pangburn was an adult administrator, *to wit*, Principal, of Brewer High School.

131. In approximately May, 2017, Libby "broke up" with Defendant B. Pushard; Libby was still under the effects of Defendant B. Pushard's psychological manipulation at that point in time, thinking that the two were in a "relationship."

132. Libby was approximately fifteen (15) at the time and Defendant B. Pushard was approximately twenty-two (22) at the time.

133. In approximately April, 2020, Defendant B. Pushard messaged Libby on saying that his dick was hard and he was horny and that he got a new house.

134. Libby was approximately eighteen (18) at this time, and Defendant B. Pushard was approximately twenty-four (24) at the time, and still an employee, agent, contractor, or otherwise, with, for, or of, Defendants Brewer School Department and/or Healy Chiropractic, LLC.

135. Defendant B. Pushard asked if Libby would come keep him company at his new house. Libby was very offended and did not speak to him after that, until June.

136. Libby, through counseling, determined that she was ready to confront Defendant B. Pushard about what he had done to her, *to wit*, the sexual abuse of her, manipulation, etc.

137.   Libby was nineteen (19) years old when she was first able to begin confronting the abuse she suffered.

138.   After Libby tried calling Defendant B. Pushard and couldn't get through, she thought perhaps he may have blocked her number.

139.   Thereafter, Libby then tried to call Matt Pushard, Defendant B. Pushard's brother, to see if he could have his brother call her; this occurred on approximately May 24, 2020, when Libby was nineteen (19).

140.   Defendant M. Pushard declined the call, so Libby texted him and stated "I know this is going to sound weird, but I need you to have your brother call me, this is important.". Matt then replied with, "Who is this?". Libby replied with, "Libby. Give him my number and have him call me.". Defendant M. Pushard then stated "Libby who?". Libby then replied with, "Matt, please have him call.". Defendant M. Pushard then stated "Who is this? Libby who?". Libby responded, "It's important.".

141.   Defendant M. Pushard thereafter then called Libby and Libby asked to speak with Defendant B. Pushard; Defendant M. Pushard's girlfriend, Sophia Rofsky, was on the phone and/or in the vicinity of the call and heard the contents of the discussion.

142.   Defendant M. Pushard then replied with, "Well, Libby can I just ask you something?", then proceeding to ask, "You said yes right?"

143.   Libby then stated that there is an age of consent for a reason, (meaning eighteen (18) years old), as it wouldn't matter if she said "yes" to Defendant B. Pushard.

144.   Defendant M. Pushard then replied with "I am just asking, you never said no right?"

145.   At no time did Libby ever discuss the abuse with Defendant M. Pushard and she was shocked when he began confronting her about the abuse, as the only way he could have

known was directly from his brother, parents, or from the rampant and widespread "rumors" in the community; Defendant M. Pushard knew, or should have known, of the illegal sexual relationship between Libby and Defendant B. Pushard and failed to intervene at any time.

146. Libby was ultimately able to get Defendant B. Pushard on the phone; he was extremely nervous, shaky, and was crying on the phone.

147. Defendant B. Pushard stated to Libby that he was concerned he was going to get in trouble and he further explained that he has worked so hard and did not want to have it all ruined.

148. Libby explained that she deserved an apology and Defendant B. Pushard agreed.

149. Libby then explained that Defendant B. Pushard needed to meet her in person for the apology so it was meaningful.

150. Defendant B. Pushard was extremely hesitant to meet in person, as he had a new girlfriend and he did not want his girlfriend finding out; however, he agreed to meet Libby in person for an apology later that week when he returned from Camp.

151. Libby then told her parents about the illegal relationship that went on with Defendant B. Pushard; they were extremely shocked and heartbroken that she had to go through that.

152. After initially reneging on his agreement to meet in person, because Defendant B. Pushard was "uncomfortable" meeting in person because he had a new girlfriend and didn't want her to "find out" about what he had done; he ultimately agreed to meet Libby in person and they met at the Brewer Walmart, around Sunset, in June 2020. Both parties stayed in their own vehicles and Libby locked her door. Libby had a witness on

speakerphone, without Defendant B. Pushard's knowledge, as safety and as a witness; the parties spoke through open windows.

153.   Defendant B. Pushard's apology was non-remorseful; he was only out for himself and he was only concerned about not getting in trouble and covering up his reputation.

154.   Defendant B. Pushard did not seem to care much about how badly he hurt Libby or how much he took away from her life, based on his years of psychological manipulation of her, as well as because of the repeated sexual assaults and rapes of her.

155.   Defendant B. Pushard explained that he was young, dumb, and inexperienced with girls and that is why he decided to have an inappropriate relationship with a thirteen-year-old child, as an explanation for his sexual assaults and rapes on Libby.

156.   Libby demanded that Defendant B. Pushard meet with her parents to apologize and also that he report the illegal relationship to his parents, although Libby, on information and belief, has firsthand knowledge that his parents knew, or should have known of the illegal relationship while it was ongoing.

157.   Libby does not believe that Defendant B. Pushard told his parents, although he claims he did; however, Libby has documentation showing that Defendant J. Pushard, Defendant B. Pushard's mother, mother was aware of the conversations he was having with a thirteen (13) to fourteen (14) year-old child, while those conversations were occurring, and that the conversations were inappropriate/illegal.

158.   Defendant J. Pushard is a mandatory reporter due to the nature of her work as a medical professional; she did not report the improper and illegal actions of her son, Defendant B. Pushard.

159.   Defendant J. Pushard took no steps to intervene and to make her son end the illegal relationship.

160.   Defendant P. Pushard, Defendant B. Pushard's father, also had actual knowledge of the Defendant inappropriately communicating/having a relationship with a thirteen (13) to fourteen (14) year-old child and took no action to intervene or to make Defendant B. Pushard stop.

161.   Defendant P. Pushard is a mandatory reporter as a retired law enforcement officer; Defendant P. Pushard did not report the improper/illegal actions of his son, Defendant B. Pushard.

162.   Defendant P. Pushard had "caught wind" of some rumors about Libby and Defendant B. Pushard, and he told Defendant B. Pushard "that he wanted it to stop."

163.   Plaintiff was present on FaceTime during the encounter between Defendants P. Pushard and B. Pushard, whereby Defendant P. Pushard confronted Defendant B. Pushard about his improper and illegal relationship with a child.

164.   Defendant P. Pushard explained "he did not want to know anything about it, he just wanted it to stop."

165.   Libby heard the entire conversation, firsthand.

166.   Upon Libby's persistence, Defendant B. Pushard agreed to meet with her parents at Cascade Park in Bangor, whereby Defendant B. Pushard was very honest and emotional with them.

167.   Defendant B. Pushard was very raw and told them the truth about almost everything that he had done towards Libby throughout the years.

168.   Defendant B. Pushard video recorded full sexual penetration with Libby, which took place in his bedroom, when she was fourteen (14) years old; this was taken on his iPad.

169.   Defendant B. Pushard took numerous photographs of Libby, both explicit as well as less explicit, but nevertheless sexual in nature and illegal/inappropriate.

170.   On one occasion during the summer, 2016, when Libby was fifteen (15) years old, while at the Conservation Club, a Brewer Police officer was checking the area after dark and questioned Defendant B. Pushard as to why he was there with a female child; Defendant B. Pushard explained Libby's parents knew her whereabouts and stated "we were just leaving and I am bringing her home now."

171.   Defendant B. Pushard had just finished raping Libby, seconds before the police officer arrived on scene; the officer took no steps to investigate why an adult male was with a young teenage child in a remote, isolated spot, after hours.

   a.   Defendant B. Pushard had just finished raping Libby by inserting his penis into her vagina, at the Conservation Club, and as the act was ending, two bright headlights were seen coming up the driveway into the back parking lot.

   b.   Libby immediately knew it was a police officer, as the parking lot was patrolled often, after sunset, however, although the police never showed up during any of the prior sexual assaults/rapes.

   c.   As the police cruiser was pulling up, Defendant B. Pushard stated he "hoped it was not Officer Rancourt", as he "didn't know what he would do" if it was (Officer Rancourt was the Brewer Police Resource Officer at the high school, at that point in time).

d.      Defendant B. Pushard quickly got his khaki shorts back on and exited his vehicle swiftly; He pretended he and Libby had just gotten back from a walk.

e.      The police officer was a young male and Libby is certain it was a Brewer police officer based on Defendant B. Pushard's comments and also because the Conservation Club is in Brewer.

f.      The officer first asked what "we were up to" and Defendant B. Pushard explained they had just gotten back from a walk and that they were "actually just leaving" and also said, "I was just about to bring her home."

g.      Libby was sitting in the passenger's seat in Defendant B. Pushard's red jeep at the time of this incident and could hear the conversation and also see the interaction.

h.      The police officer asked for Defendant B. Pushard's license so he could go run it.

i.      While the police officer was in his cruiser, Libby was telling Defendant B. Pushard, who had returned to the vehicle, how scared she was and she was starting to cry.

j.      Defendant B. Pushard was telling Libby to relax, not to cry and that it would be okay. At the time, Libby was concerned about Defendant B. Pushard getting arrested; Libby was fifteen years old.

k.      Libby was emotionally distraught about what might happen to Defendant B. Pushard based on his psychological manipulation of her.

l.      When the police officer was not around, Defendant B. Pushard was very nervous and anxious.

m.   When the officer approached Defendant B. Pushard and was talking to him, Defendant B. Pushard was normal, polite and respectful and did not portray any nervousness.

n.   Defendant B. Pushard explained to Libby that he knew what to do as his father was previously in law enforcement.

o.   On information and belief, Defendant B. Pushard's father, Defendant P. Pushard, is well known in the community, with law enforcement, including, but not limited to, the Brewer Police Department, as he is a retired Maine State Trooper.

p.   The officer told Libby and Defendant B. Pushard that the parking lot is not to have cars in it after sunset and they headed on their way.

q.   The officer told them to have a great night and did not talk with much emotion or passion. The male officer was quick and to the point.

r.   At no time did the officer ask for Libby's name, date of birth or any other identifying information.

172.   Libby has since further struggled with her mental health and emotional well-being as a result of all of the Defendants' actions.

173.   Libby has been injured both physically and emotionally and will likely never fully recover from the abuse she withstood based on the actions of all of the named Defendants.

174.   Libby is seeking damages for her injuries.

175.   At all times pertinent herein, Defendant B. Pushard, intentionally and purposefully induced Libby to conceal the illegal relationship for his own personal gain and satisfaction, through his position of power and control over her to accomplish this.

176. The remaining Defendants knew or should have known of Defendant B. Pushard's actions and conduct towards Plaintiff and failed to protect her; therefore, they are all proximately liable to her in damages for Defendant B. Pushard's conduct.

177. At all times pertinent herein, Defendant B. Pushard, induced Libby to conceal their illegal relationship for his own personal gain and satisfaction, using his power and control over her to accomplish this; this occurred while Defendant B. Pushard interned/worked/contracted for and/or with the BHS/BSD as an athletic trainer, or otherwise was an agent of the BHS/BSD.

178. Defendants Healy and Healy Chiropractic, LLC, worked for/contracted with the Brewer School Department for athletic training to the various BHS/BSD athletic programs and, at all times herein, employed Defendant B. Pushard, whether directly or as an intern, agent or associate; Defendant Brewer School Department, Defendant Pangburn, Defendant Healy and Defendant Healy Chiropractic LLC, at all times had complete oversight and control of Defendant B. Pushard and failed to discharge their oversight duties, allowing Defendant B. Pushard to injure Libby; therefore, they are all proximately liable to her in damages for Defendant B. Pushard's conduct.

179. All defendants knew or should have known of Defendant B. Pushard's actions and conduct towards Libby and failed to protect her; therefore, they are all proximately liable to her in damages for Defendant B. Pushard's conduct.

180. As a direct and proximate result of the actions of Defendants and their breach of duty to Libby, Libby was seriously damaged.

181. Defendants B. Pushard, J. Pushard, P. Pushard and M. Pushard conspired against Libby to deprive her of her rights as aforesaid and committed the stated wrongs against her all with the knowledge of the wrongs involved, which caused her harm and damages.

182. These Defendants are vicariously liable for the damages to Libby.

183. The conduct of the Defendants, each of them, and collectively, in their professional capacities and individually, was intentional and malicious and said conduct was so reckless, deliberate, and outrageous, as to be beyond all bounds of decency and to imply malice towards Libby.

184. As a direct and proximate result of said intentional, reckless, deliberate, malicious and, or outrageous conduct of the Defendants, Libby was caused to suffer severe emotional and physical distress, humiliation, and mental anguish, all as more particularly set forth herein.

## **Count I**
### **(42 USC §1983: Autonomy and Bodily Injury)**
**(Defendants B. Pushard; Palmer; Gardiner; Pangburn; ;Small; Brewer School Department; Healy; Healy Chiropractic, LLC; Officer John/Jane Doe, Brewer Police Department)**

185. Libby repeats and re-alleges paragraphs 1 to 184 of this Complaint as though fully set forth herein.

186. Libby had a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to not be assaulted, battered, sexually assaulted, or otherwise injured as a student at Brewer High School, by Defendants, nor be denied her rights to services, aids and care for her physical, medical and psychological injuries.

187. At all times relevant to this Complaint, Defendants were acting under the color of law, statute, ordinance, regulations, actions or usage of the State of Maine, City of Brewer or

County of Penobscot, and had actual notice of the wrongdoings of Defendants against her, and failed to protect, intervene, report to others, violating mandating reporting under the law, of Defendants misconduct toward Libby.

188. The Defendants' assaultive acts, non-protection and non-reporting of violations of her constitutional and statutory rights.

189. By the actions described above, the Defendants have deprived Libby of her clearly established rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, to be free from harm and assaults and the Constitution and Laws of the State of Maine and United States.

190. The Defendants, by and through their agents, knowingly and with deliberate indifference and reckless disregard to the statutory and Constitutional rights of Libby, maintained and permitted official policies and customs and practices of permitting the occurrence of the types of wrongs set forth herein above, and improperly hired, trained, supervised and retained culpable Defendant(s) anyway.

191. These policies and/or customs and practices included, but limited to, assault, battery, sexual assault, including Maine and Federal statutes.

192. Also, the Government policies were the moving force behind their actions, including, but not limited to, the improper hiring, supervision, training and retention of Defendants, allowing Defendant(s) to have contact with Plaintiff, including assaultive and sexually abusive behavior and failing to report and stop the conduct.

193. In addition, Defendant Pangburn, principal of the Brewer High School, knew or should have known of the customs and practices which led directly to the injuries sustained by Libby, and in violation of her clearly established rights.

194.    The Defendants all failed to consider the following:

    a.    The facts and circumstances of this case, including the level of crime alleged, and its severity;

    b.    the status of Libby as a minor female and Defendant's improper interaction with her even with actual notice of the wrongdoing;

    c.    the totality of circumstances involved in allowing the assaultive and improper acts of Defendants against Libby, and failure to intervene and provide assistance from mental health professionals or other experts to analyze the best method to help Libby and stop the assaults;

    d.    taking no action to protect Libby as a minor child;

    e.    under all the circumstances and available resources, refusing to intervene and protect Libby;

195.    Further, the Governmental Agencies involved and Defendants, by allowing the abuse of Libby as a minor student, did through its policies, approvals, hiring, training and use thereof, maintained and condoned a custom and practice of depriving individuals such as Libby, of their Constitutional rights by their traditions, policies, ordinances, statutes, manuals and actions promulgated by the Brewer School System and the agencies and Governments involved.

196.    The Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Libby's civil rights and right to equal protection of law as found in 42 USC §1983 and the rights secured to her by the United States Constitution and the Constitution and laws of the State of Maine, and conspired to inflict a wrong against and injury upon Libby.

197.   Further, the Defendants and Government Agencies involved failed to issue or use widely accepted and other means by which to protect Libby, a minor female student, including Law Enforcement, education professionals, parents, and others working directly with children/students, to protect Libby from harm and in accordance with accepted standards and protocols.

198.   Such errant policies and/or customs and practices of the Defendants were the moving force behind the violations of Libby's Fourth and Fourteenth Amendment rights, and the Defendants, and each of them, are liable for all of the injuries sustained by Libby, as set forth hereinabove.

199.   An objectively reasonable school officer, person working with children or Government official in each of the Defendants positions, would have understood that he/she was violating Libby's clearly established Fourth and Fourteenth Amendment rights.

200.   The officers and officials conduct were so deficient that no reasonable person or official could have made the decision to allow the assaults of Libby, under the circumstances.

201.   Each of the officers' acts and omissions before, during and after the assaults and activities, constitute a conspiracy against Libby, and were malicious and outrageous, or were so outrageous that malice can be implied and considered more than a reckless disregard and deliberate indifference for Libby; and Defendants knew of the dangers and protected themselves, rather than Libby, all without adequate warning to her or her parents.

202.   As a direct and proximate result of the Defendants' assaultive acts of Libby, she was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs,

loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes, moves that that this Honorable Court will grant Judgment in her favor for compensatory damages of $5 million, and punitive damages of $10 million, against Defendants, including an award of attorneys' fees pursuant to 42 USC §1988, and award her any further relief it deems just and proper.

<u>**Count II**</u>
**(42 USC §1983: Due Process)**
**(Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department; Healy; Healy Chiropractic, LLC; Officer John/Jane Doe, Brewer Police Department)**

203.    Libby alleges and re-alleges the allegations in paragraphs 1-202 of this Complaint as if set forth herein.

204.    The school officials and Defendants knew that Libby was a minor female student, and not capable of making informed choices, and that she was being coerced and/or threatened by Defendant B. Pushard, which a minor female student, required protection therefrom.

205.    As a direct and proximate result of the Defendants' actions or inactions, Libby was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in    the future.

**WHEREFORE**, Plaintiff Libby Hewes, moves that that this Honorable Court will grant Judgment in her favor for compensatory damages of $5 million, and punitive damages of $10 million, against Defendants, including an award of attorneys' fees pursuant to 42 USC §1988,

and award her any further relief it deems just and proper.

## Count III
### (42 USC §1983: Equal Protection)
**(Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department; Healy; Healy Chiropractic, LLC; Officer John/Jane Doe, Brewer Police Department)**

206.   Libby alleges and re-alleges the allegations in paragraphs 1-205 of this Complaint as if set forth herein.

207.   The school officials and Defendants knew that Libby was a minor female student, and not capable of making informed choices, and that she was being coerced and/or threatened by Defendant B. Pangburn, which a minor female student, required protection therefrom.

208.   As a direct and proximate result of the Defendants' actions or inactions, Libby was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in  the future.

209.   Libby suffered a violation of her right to equal protection of the laws.

**WHEREFORE**, Plaintiff Libby Hewes, moves that that this Honorable Court will grant Judgment in her favor for compensatory damages of $5 million, and punitive damages of $10 million, against Defendants, including an award of attorneys' fees pursuant to 42 USC §1988, and award her any further relief it deems just and proper.

## Count IV
### (Assault and Battery)
**(Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department; Healy; Healy Chiropractic, LLC)**

210.   Libby alleges and re-alleges the allegations in paragraphs 1-209 of this Complaint as if set

forth herein.

211.   The Defendant, Benjamin Pushard, assaulted Libby without her consent or any valid basis therefore, by accosting her, physically assaulting her, detaining her improperly, prohibiting her from leaving of her own accord and bullying, and harassing her.

212.   The remaining Defendants had actual knowledge, or should have known, that Defendant B. Pushard was assaulting Libby, all of whom had a duty to protect Libby and failed in this duty, which did put Libby in harm's way, therefore, all Defendants are proximately liable to Libby for any damages she incurred as a result of the sexual and emotional abuse she withstood at the hands of Defendant Benjamin Pushard.

213.   As a direct and proximate result of the abuse and actions against Libby by Defendant B. Pushard, which occurred in the scope and course of his training, employment or contracting with the Brewer School System, conduct for which all Defendants are proximately liable for, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count V
### (Negligence - General)
### (All Defendants)

214.   Libby repeats and re-alleges the allegations in paragraphs 1 through 213 as if fully set forth herein.

215.   Defendant Benjamin Pushard, owed a fiduciary duty, as well as a general duty of care, to Libby, through his role of power and control over her, and negligently discharged his duty of care owed to her when he formed an illegal and improper relationship with her, emotionally and sexually, without her ability to consent, based on her age as well as his supervisory status over her, or any valid basis therefore.

216.   The remaining Defendants owed Libby a fiduciary duty as well as a general duty of care and negligently discharged that duty when they knew or should have known that Defendant B. Pushard was in an improper emotional and/or sexual relationship with Libby, which did put Libby in harm's way, therefore, all Defendants are proximately liable to Libby for any damages she incurred as a result of the actions of Defendant B. Pushard.

217.   As a direct and proximate result of the actions against Libby by Defendant B. Pushard, which occurred in the scope and course of his training, employment and/or contracting with the Brewer School System, conduct for which all Defendants are proximately liable for, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count VI
### (Negligence - Respondeat Superior / Agency)
### (Defendants Brewer School Department; Palmer; Gardiner; Pangburn; Small; Healy; Healy Chiropractic)

218.   Libby repeats and re-alleges the allegations in paragraphs 1 through 217 as if fully set forth herein.

219.   Defendants owed Libby a fiduciary duty as well as a general duty of care and negligently discharged that duty when they knew or should have known that Defendant B. Pushard was in an improper emotional and/or sexual relationship with Libby, which did put Libby in harm's way, therefore, all Defendants are proximately liable to Libby for any damages she incurred as a result of the actions of Defendant B. Pushard.

220.   As a direct and proximate result of the actions against Libby by Defendant B. Pushard, which occurred in the scope and course of his training, employment and/or contracting with the Brewer School System, conduct for which all Defendants are proximately liable for, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Count VII
**(Title IX-Education Amendments of 1972-20 USC §§1681, et seq. – Deliberate Indifference)**
**(Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department; Healy; Healy Chiropractic, LLC)**

221.   Libby repeats and re-alleges paragraphs 1 through 220 of this Complaint as fully set forth herein.

222.   The Defendant teacher/school employee/agent sexually assaulted and harassed Libby.

223.    The Defendant school officials, school employees or others, having direct oversight and control over Defendant B. Pushard, all having direct supervision over Libby, were tasked with protecting Libby in her capacity as a minor student of the BSS, had actual knowledge of the allegations by appropriate persons, including, but not limited to, the school principal, whose response to those allegations were so deficient and/or non-existent, that demonstrates deliberate interference to Libby's rights and protections.

224.    The misconduct against Libby was so severe, pervasive and objectionably offensive, that it denied her as the victim of equal access to educational opportunities or benefits, and substantial personal injuries.

225.    The Defendants actually knew or should have known of the pervasive, serious and ongoing sexual assaults and harassment of Libby by Defendants, including attempts to cover-up the wrongdoing and protect the Defendants from liability.

226.    The Defendants knew that the misconduct occurred on and off school campus property, yet did nothing to protect Libby from the ongoing harm.

227.    The acts of Defendants violate Title IX of the Education Amendment of 1972 (Title IX), 20 USC §§1681, et seq., and for the Defendants' response to protect Libby which amounts to deliberate indifference to the harassment and abuse, and for that clearly unreasonable response.

228.    As a direct and proximate  result of the actions against Libby by Defendants, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

        **WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against

Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Count VIII
### (Title IX-Education Amendments of 1972-20 USC §§1681, et seq. – Intentional Discrimination)
### (Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department; Healy; Healy Chiropractic, LLC)

229.   Libby repeats and re-alleges paragraphs 1 through 228 of this Complaint as fully set forth herein.

230.   The Defendant school employee / agent sexually assaulted and harassed Libby.

231.   The Defendant school officials, school employees or others, having direct oversight and control over Defendant B. Pushard, all having direct supervision over Libby, were tasked with protecting Libby in her capacity as a minor student of the BSD, had/have actual knowledge of the allegations by appropriate persons, including, but not limited to, the school principal, whose response to those allegations were so deficient and/or non-existent, that demonstrates deliberate interference to Libby's rights and protections.

232.   The Brewer School Department's Affirmative Action Plan fails to comply with the requirement of Title IX, as written and implemented, as the Plaintiff was seriously injured on and off of school property, during and after school hours, by and through a school employee/intern/trainee/agent, which the school had actual notice of, and which the school failed to act by and through the policy in place at the time of the injury to the Plaintiff.

233. Had the Affirmative Action Plan been compliant with Title IX, the school officials would have acted and protected the Plaintiff, but due to the deficiencies in the policy, Plaintiff was injured to which the Defendants are strictly liable.

234. The Defendants knew that the misconduct occurred on and off school campus property, yet did nothing to protect Libby from the ongoing harm.

235. The Defendants have a policy and/or practice that discriminated against Libby based on her sex. *See* Complaint Attachment 1.

236. The BSD's Policy required the school to take action in this matter and the school took none, therefore, the Defendant's are liable for their intentional discrimination of Libby, based on her gender and age.

237. The acts of Defendants violate Title IX of the Education Amendment of 1972 (Title IX), 20 USC §§1681, et seq., and for the Defendants' response to protect Libby which amounts to deliberate indifference to the harassment and abuse, and for that clearly unreasonable response.

238. As a direct and proximate  result of the actions against Libby by Defendants, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count IX

**(Title IX-Education Amendments of 1972-20 USC §§1681, et seq. – Strict Liability)**
**(Defendants Palmer; Gardiner; Pangburn; Small; Brewer School Department)**

239.   Libby repeats and re-alleges paragraphs 1 through 238 of this Complaint as fully set forth herein.

240.   The Defendant school employee / agent sexually assaulted and harassed Libby.

241.   The Defendant school officials, school employees or others, having direct oversight and control over Defendant B. Pushard, all having direct supervision over Libby, were tasked with protecting Libby in her capacity as a minor student of the BSD, had actual knowledge of the allegations by appropriate persons, including, but not limited to, the school principal, whose response to those allegations were so deficient and/or non-existent, that demonstrates deliberate interference to Libby's rights and protections.

242.   The Defendants are strictly liable for the ongoing sexual assaults and harassment of Libby by Defendants, including attempts to cover-up the wrongdoing and protect the Defendants from liability.

243.   As a direct and proximate  result of the actions against Libby by Defendants, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count X**</u>
**(Title IX-Education Amendments of 1972-20 USC §§1681, et seq. – Retaliation)**

**(Defendants Palmer; Gardiner; Pangburn; Small; Brewer School Department)**

244.    Libby repeats and re-alleges paragraphs 1 through 243 of this Complaint as fully set forth herein.

245.    After Libby placed the Defendants on notice of the above captioned matter, as well as after her initial complaint was filed, David Utterback, the Brewer High School Athletic Director, on behalf of the Defendants, approached another school employee who is a friend and former classmate of Libby's and asked this person to speak with school administrators as part of an investigation into Libby; Utterbaack was looking for information and witnesses regarding Libby.

246.    This person refused, however, after relentless badgering by Utterback, she agreed to answer his questions on the spot; Utterback asked this person about Libby and her sexual history as well as other information that was clearly intended to smear Libby's reputation and character.

247.    On information and belief, Utterback and others within the Brewer School Department are retaliating against Libby for her filing of this complaint and for reporting the sexual assaults on her by a Brewer School Department employee/agent.

248.    In fact, according to an anonymous eye witness, the student players on the BHS softball team are consistently touching each other, such as on the shoulder, and then stating "oh no, you touched me, now I am going to sue you for fifteen million dollars," which is occurring in front of the coaching staff, employees of Defendant Brewer School Department, and no BHS or BSD employees are stopping the harassing behavior towards and of Libby.

249.    As stated in Sheridan Thomas, et al. v. Board of Regents of the University of Nebraska,

et al., Case No. 4:20-cv-03081-RFR-SMB, United States' Statement of Interest, U.S. Dist, Court for the Dist. of Nebraska, Pgs. 16 – 17, Title IX permits damages actions based on retaliation.

250.  The U.S., in its filing went on to say that: In Jackson v. Birmingham Board of Education, 544 U.S. 167[, 178] (2005), the Supreme Court explained that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex discrimination, because such retaliation is intentional discrimination on the basis of sex." *See id.* (Internal citation omitted).

251.  Further "The Court reasoned that Title IX's prohibition on 'subjecting any person to discrimination on the basis of sex' 'authorizes private parties to seek monetary damages for intentional violations of Title IX,' including retaliation and 'a recipient's deliberate indifference' to peer sexual harassment. *See id.* (Internal citation omitted, internal quotation marks omitted and altered).

252.  "When analyzing allegations of retaliation by a federal funding recipient under Title IX, courts examine whether: (1) the plaintiff complained about sex discrimination or otherwise engaged in protected activity; (2) the plaintiff suffered an adverse action; and (3) a causal connection exists between the protected activity and adverse action." *See id.* (Internal citation omitted).

253.  The Defendants have and are retaliating against Libby for reporting the sexual abuse and for protecting her liberty interests and other constitutionally protected rights, through the above captioned matter, in violation of the law. *See id.*

254.  As a direct and proximate  result of the actions against Libby by Defendants, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and

she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count XI**</u>
**(Negligent Hiring, Training, Supervision and Retention)**
**(Defendants Brewer School Department; Palmer; Gardiner; Pangburn; Healy; Healy Chiropractic, LLC)**

255.   Libby repeats and re-alleges paragraphs 1 through 254 of this Complaint as fully set forth herein.

256.   The Defendants were negligent in the hiring, training, supervision and retention of Defendant B. Pushard, and Defendant Small.

257.   Considering the special relationship between the Defendants and Libby, as a student in the Brewer School System, the Defendants owed Libby a duty of care.

258.   Defendants breached that duty of care, as they allowed Defendants B. Pushard and Small to directly injure the Libby, proximately causing damages and injuries to Libby, as noted herein.

259.   As a direct and proximate result of the actions against Libby by Defendants, Libby has been seriously damaged and injured; Libby's reputation has been damaged as well, and she suffered physical and emotional damage and injury, fear, upset, and humiliation, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against

Defendants for compensatory damages of $5 million, and punitive damages of $10 million, plus accruing interest, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Count XII
### (Negligent Infliction of Emotional Distress- NIED)
### (All Defendants)

260. Libby repeats and re-alleges paragraphs 1 through 259 of this Complaint as though fully set forth herein.

261. The actions of all Defendants were so offensive, vile, malicious and directed at Libby to injure her that she suffered emotional distress that a reasonable person could be expected to be harmed, and her privacy was so invaded, she became ill, her injuries will continue into the future and Defendants knew or should have known Libby would be so affected by their misconduct.

262. Defendant B. Pushard in fact threatened and intimidated Libby, through threats and psychological manipulation, based on her age and status as a female minor student.

263. As a direct and proximate result of the abuse of Libby by Defendants, Libby has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Count XIII
### (Intentional Infliction of Emotional Distress – IIED; Outrage)
### (All Defendants)

264.   Libby repeats and re-alleges paragraphs 1 through 263 of this Complaint as though fully set forth herein.

265.   The actions of Defendants were so offensive, vile, malicious and directed at Libby to injure her that she suffered emotional distress that a reasonable person could be expected to be harmed, and her privacy was so invaded, she became ill, her injuries will continue into the future and Defendants knew or should have known Libby would be so affected by their misconduct.

266.   The Defendants, by their extreme and outrageous conduct against Libby, did intentionally or recklessly cause severe emotional distress to Libby including times when they were inflicting bodily harm or threats to her, and it was certain or substantially certain that such distress would result.

267.   The conduct of Defendants was so extreme and outrageous as to exceed all bounds of decency and it must be regarded as atrocious and utterly intolerable in a civilized society.

268.   The emotional distress suffered by Libby was so severe that no reasonable person could be expected to tolerate it.

269.   Defendant B. Pushard in fact threatened and intimidated Libby, through threats and psychological manipulation, based on her age and status as a female minor student.

270.   As a direct and proximate result of the abuse of Libby by Defendants, Plaintiff has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of

$10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count XIV
**(Violation of Maine Constitution, Article I, Section 1)**
**(All Defendants)**

271.   Libby repeats and re-alleges paragraphs 1 through 270 of this Complaint as though fully set forth herein.

272.   "All [Maine] people are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Me. Const. Art. I, §1.

273.   The Defendants violated Libby's rights pursuant to the Maine Constitution.

274.   As a direct and proximate result of the abuse of Libby by Defendants, Libby has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

## Count XV
**(Violation of Maine Constitution, Article I, Section 6-A)**
**(All Defendants)**

275.   Libby repeats and re-alleges paragraphs 1 through 274 of this Complaint as though fully set forth herein.

276.   "No [Maine] person shall be deprived of life, liberty or property without due process of

law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that

person's civil rights or be discriminated against in the exercise thereof." Me. Const. Art. I,

§6-A. *See Town of Frye Island v. State*, 2008 ME 27, ¶ 14, 940 A.2d 1065, 1069 ("The

equal protection clause of the Maine Constitution provides that "[n]o person shall ... be

denied the equal protection of the laws...." Me. Const.. art. I, § 6–A. The United States

Constitution provides similarly, and the two clauses provide co-extensive

protection. *See* U.S. Const. amend. XIV, § 1[.]"); *In re D.P.*, 2013 ME 40, ¶ 11, 65 A.3d

1216, 1220 "The due process protections of the Fourteenth Amendment prohibit a state

from infringing upon a person's fundamental rights or liberties unless the infringement

[is] narrowly tailored to serve a compelling government interest." (Internal quotation

marks omitted); *see also Martin v. Dep't of Corr.*, 2018 ME 103, ¶ 16, 190 A.3d 237, 243

"The Maine Constitution's concept of due process is identical to that contained in the

United States Constitution, and as the Supreme Court has held, absent a countervailing

state interest of overriding significance, a generally valid statute or rule may be held

constitutionally invalid as applied when it operates to deprive an individual of a protected

right[.]" (Internal citation omitted; internal quotation marks omitted).

277.   The Defendants violated Libby's rights pursuant to the Maine Constitution.

278.   As a direct and proximate result of the abuse of Libby by Defendants, Libby has been

seriously damaged and injured, her reputation has been damaged, she suffered physical and

emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against

Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of

$10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court

deems just and proper, and whatever other relief is warranted in the proceedings.

## Count XVI
### (Interference with Maine Civil Rights, 5 M.R.S.A. §4682)
### (All Defendants)

279.    Libby repeats and re-alleges the allegations in paragraphs 1 through 278 as if fully set forth herein.

280.    Defendants did, acting under color of law, and in their official capacities, and individually, interfere with Libby's civil rights and right to equal protection under the law, and the rights secured to her by the Constitution and the Laws of the State of Maine and inflicted a wrong(s) against and injury upon Libby and for violations of 5 M.R.S.A. §4682.

281.    The Defendants intentionally interfered or attempted to intentionally interfere by physical force or violence against Libby or by threat of physical force or violence against her, with the exercise or enjoyment of her rights secured by the United States and Maine Constitutions, whose exercise or enjoyment of those rights was interfered with or attempted to be interfered with. *See Fowles v. Stearns*, 886 F. Supp. 894, 901 (D. Me. 1995) ("The Maine Civil Rights Act, like section 1983, authorizes civil actions by private parties for intentional violations of a person's constitutional rights through actual or threatened violence, damage, or destruction of property or trespass.")

282.    As a direct and proximate result of the Defendants' assaultive acts or threats against Libby, she was deprived of the rights, privileges and immunities secured by the United States Constitution and the Maine Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, and a deprivation of her rights, all of which will continue in the

future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

<u>**Count XVII**</u>
**(Invasion of Privacy)**
**(All Defendants)**

283. Libby repeats and re-alleges paragraphs 1 to 282 of this Complaint as though fully set forth herein.

284. The Defendant Benjamin Pushard, assaulted Libby without her consent or a valid basis therefore by accosting her, physically assaulting her, detaining her improperly and demanding she participate in sexual conduct with him, prohibiting her from leaving of her own accord and bullying, harassing and assault, and invading her privacy, including through the recording of sexual videos and photographs.

285. The Defendants are vicariously liable to Libby in damages she incurred by the actions of Defendant Benjamin Pushard.

286. As a direct and proximate result of the Defendants' assaultive acts of Libby, she was deprived of the rights, privileges and immunities secured by the United States Constitution, and she sustained serious and permanent injuries, both physical, emotional, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and she suffers a permanent impairment, all of which will continue in the future.

**WHEREFORE**, Plaintiff Libby Hewes moves that this Court enter judgment against

Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Count XVIII
#### (Violation of Maine Constitution, Article I, Section 19)
#### (Defendants B. Pushard; Palmer; Gardiner; Pangburn; Small; Brewer School Department;)

287.   Libby repeats and re-alleges paragraphs 1 through 286 of this Complaint as though fully set forth herein.

288.   "Every person [in Maine], for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. Art. I, §19.

289.   The Defendants violated Libby's rights pursuant to the Maine Constitution by failing to exercise their duties pursuant to Title IX, *inter alia*.

290.   As a direct and proximate result of the abuse of Libby by Defendants, Libby has been seriously damaged and injured, her reputation has been damaged, she suffered physical and emotional upset, distress, humiliation and damages, all of which will continue in the future.

**WHEREFORE,** Plaintiff Libby Hewes moves that this Court enter judgment against Defendants for compensatory damages of $5 million, plus accruing interest, punitive damages of $10 million, plus costs, including reasonable attorney's fees, and such other relief as this Court deems just and proper, and whatever other relief is warranted in the proceedings.

### Demand for a Jury Trial

Plaintiff hereby demands a Trial by Jury, pursuant to F.R. Civ. P. 38(b), on all counts in the above captioned matter.

Dated at Bangor, Maine                       /s/ Ezra A. R. Willey
June 18, 2021                                Ezra A. R. Willey, Esq. (#5025)
                                             Attorney for Plaintiff
                                             WILLEY LAW OFFICES
                                             15 Columbia St., Ste. 501
                                             P. O. Box 924
                                             Bangor, ME 04402-0924