**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| **LIBBY HEWES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **1:21-cv-00125-JDL** |
| | ) |
| **SAMANTHA PANGBURN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**ORDER ON MOTIONS TO DISMISS**

The Plaintiff, Libby Hewes, initiated this action (ECF No. 1) against Defendants Brewer School Department ("the Department"); Gregg Palmer, Gretchen Gardner, Samantha Pangburn, and Morgan Small (collectively, the "Individual School Defendants"); Benjamin Pushard (hereinafter referred to as "Pushard"); Phillip Pushard; Jacqueline Pushard; Matthew Pushard; Patrick Healy; Healy Chiropractic, LLC; and Officer John/Jane Doe. Hewes alleges that she was sexually assaulted over a two-year period by Pushard while she was a student in the Brewer School District. Pushard is alleged to have been, at various times during that period, a trainee, intern, contractor, or employee of the Brewer School Department. Hewes also alleges that multiple school administrators and employees knew or should have known of the abuse and failed to protect her.

Hewes filed a complaint in May 2021 (ECF No. 1), which was amended in June 2021 (ECF No. 4), and includes 18 counts arising under 42 U.S.C.A. § 1983 (West 2022), Title IX, Maine tort law, and Maine's Constitution and Civil Rights Act. The Brewer School Department and Individual School Defendants have moved to dismiss

(ECF Nos. 42, 43) for failure to state a claim upon which relief may be granted.[1]  For the reasons that follow, the Individual School Defendants' motion is granted in part and denied in part, and the Brewer School Department's motion is granted in part and denied in part.

## I.  BACKGROUND

The following allegations of the amended complaint are treated as true for the purposes of assessing the Defendants' motions to dismiss.

### A.     The Parties

Plaintiff Libby Hewes was a student within the Brewer School District during the time period relevant to this litigation—2014 through 2017.  She was thirteen years old at the start of this period, and fifteen at the end.

When the alleged events occurred, Defendant Palmer served as Superintendent for the Brewer School Department, with oversight and control of all students, employees, coaches, interns, agents, and contractors at Brewer High School and within the Brewer School Department, as well as responsibility for development and implementation of Title IX and affirmative action plans and policies.  Defendant Gardner served as the Title IX/Affirmative Action Officer for the Brewer School Department.  In that role, she was responsible for development and implementation of Title IX and affirmative action plans and policies.  Defendant Pangburn was the Principal of Brewer High School.  Defendant Small served as the Coach of the Brewer

---

[1]   Officer John/Jane Doe's Motion to Dismiss (ECF No. 24) and Defendants Phillip Pushard, Jacqueline Pushard, and Matthew Pushard's Motion to Dismiss (ECF No. 30) were previously granted (ECF No. 49).  Defendants Patrick Healy and Healy Chiropractic, LLC's Motion to Dismiss (ECF No. 31) was previously granted as to Counts VII, VIII, IX, X, XIV, and XVI and denied in all other respects (ECF No. 49).

High School Junior Varsity Softball Team.  Defendant Brewer School Department's principal place of business is in Brewer, Maine.

## B.  The Department's Affirmative Action Plan

The Department maintained an Affirmative Action Plan to protect students from discrimination based on protected categories.  The plan included a harassment and sexual harassment policy which required school staff to report incidents of abuse and harassment to the superintendent or the superintendent's designee for investigation.  The plan defines a complaint of sexual harassment as an allegation that the student has been discriminated against or harassed on the basis of sex.

## C.  Pushard's Alleged Sexual Abuse of Hewes

In April 2014, Libby Hewes was a seventh-grade student at the Brewer Community School.  The amended complaint alleges that Hewes and Small had an established relationship when Hewes was in middle school and Small was a coach at the high school but does not allege that Small was Hewes's coach.  Hewes struggled with her mental health during this time and began to communicate daily through text messages and Snapchat with Defendant Small about her struggles.  In approximately December 2014, Small suggested to Hewes that Pushard might be able to help her with her mental health issues.  Pushard was then working as a trainee, intern, employee, agent, or contractor with and through Brewer High School and the Brewer School Department, directly or through Healy Chiropractic, LLC or Patrick Healy.  Hewes and Pushard then became friends on Snapchat, where they discussed school and mental health issues.  Over time, their communications became flirtatious.

In January 2015, Hewes and Pushard met in person for the first time.  Over a period of more than two years, from April 2015 until approximately May 2017, Pushard sexually abused Hewes on multiple occasions, including on school property.  Pushard also emailed Hewes on her school-issued email account from his personal account.

In approximately April 2015, when Hewes was in eighth grade, Pushard gave Hewes a ride home after softball practice.  Small and Danielle McDonough, Libby's coach, were both aware of this, and McDonough asked Libby about it several days later and told Libby that she would speak with her parents if it happened again.  By April 2017, rumors of Hewes and Pushard's relationship were circulating around the Brewer High School community.  A classmate told Hewes that "she should go f*** her 22-year-old boyfriend," referring to Pushard.  Hewes, upset by the comment and afraid that Pushard would get in trouble, met with the Principal, Defendant Pangburn, to inform her of the rumors.  Hewes denied the truth of the rumors and told Pangburn that she did not actually know Pushard very well.  Pangburn told Hewes that she would "keep an ear out" and, if she heard anything, she would "squash" the rumors.  ECF No. 4 ¶ 103.  Pangburn subsequently met with the Athletic Director's secretary to discuss the rumors, and the secretary "told . . . Pangburn that . . . Pushard would never do anything like that as she knew him personally."   ECF No. 4 ¶ 129.  Pangburn took no further action.  Pangburn did not report the rumors to the Superintendent for investigation, as required under the Affirmative Action Plan.

Hewes ended the relationship with Pushard in May 2017, when Hewes was 15 years old and Pushard was 22 years old.  After Hewes notified the Department of her intent to file a complaint, and following the filing of this action, David Utterback, the Brewer High School Athletic Director, questioned a school employee who personally knew Hewes about Hewes and her sexual history.  Utterback also asked this individual to speak with school administrators as part of an investigation into Hewes.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Id*. at 53 (quoting *Grajales v. P.R. Ports Auth*., 682 F.3d 40, 44 (1st Cir. 2012)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011):  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 55 (1st Cir. 2012).  Determining the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusory statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id*. The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id*.

## III.  DISCUSSION

### A.    42 U.S.C.A. § 1983 Claims (Counts I, II and III)

Counts I, II, and III of the amended complaint allege claims under 42 U.S.C.A. § 1983. Count I alleges a violation of Hewes's Fourth and Fourteenth Amendment rights to autonomy and bodily integrity. Count II alleges a violation of the Due Process Clause of the Fourteenth Amendment, although it does not specify whether this is a procedural or substantive due process claim. Count III alleges a violation of the Equal Protection Clause of the Fourteenth Amendment.

Section 1983 "affords a private right of action in favor of persons whose federally assured rights are abridged by state actors." *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (quoting *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018)). To prevail on a § 1983 claim, "a plaintiff must show that 'the challenged conduct [is] attributable to a person acting under color of state law' and that 'the conduct must have worked a denial of rights secured by the Constitution or by federal law.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 37 (1st Cir. 2013) (alteration in original) (quoting *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)). "There must be a causal connection between the defendant's conduct and the alleged deprivation: 'only those individuals who participated in the conduct that deprived the plaintiff of

his rights can be held liable.'" *García-González v. Puig-Morales*, 761 F.3d 81, 87 (1st Cir. 2014) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).

Gardner, Pangburn, and Small are sued in their professional capacities, and Pangburn and Small are also sued in their personal capacities. Because Hewes's amended complaint characterizes her suit against Palmer and Gardner as "professional" capacity claims, these claims must be construed as against the Brewer School Department. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (explaining that official-capacity suits, in contrast to personal-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).

A personal-capacity suit may be brought against state actors for actions taken under the color of law. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Hewes's only allegation that Small acted under the color of law is the conclusory assertion that Small, as Coach of the Brewer High School Junior Varsity Softball Team, "was, at all material times herein, acting under the color of state and federal law." ECF No. 4 ¶ 8. However, Hewes does not provide any factual allegations to establish a nexus between Small's employment with the Department and Pushard's alleged abuse of Hewes, which is necessary to show that Small acted under the color of law. Instead, the facts as alleged in the amended complaint are that Small and Hewes had a personal relationship unconnected to Small's role with the Department. Hewes does not make any arguments to the contrary in her response to the motions to dismiss. Therefore, the § 1983 claims can only be maintained against the Brewer School

Department and against Pangburn in her personal capacity.  The § 1983 claims against Small are dismissed.

### 1.  42 U.S.C.A. § 1983 – Autonomy and Bodily Injury (Count I)

The Fourteenth Amendment provides a substantive due process right "[of students] to bodily integrity that includes the right to be free from sexual abuse." *Doe v. Sch. Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 65 (D. Me. 1999).  The facts allege that Hewes's fundamental right to bodily integrity was violated because she was sexually abused while she was a student.  Hewes claims that Pangburn, Small, and the Brewer School Department are liable for Pushard's abuse of Hewes.  The standards for determining § 1983 liability for individual and municipal defendants differ.  Individual government officials may be sued under § 1983 "for federal constitutional or statutory violations," although "they are generally shielded from civil damages liability under the principle of qualified immunity."  *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002).  In contrast, a municipality may only be liable under § 1983 "where that government's policy or custom is responsible for causing the constitutional violation or injury."  *Id.* at 9 (citing *Monell*, 436 U.S. at 690-91).  "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S. at 691.  Hewes asserts two potential theories of liability under her § 1983 bodily autonomy claim—state-created danger and failure to train.[2]

---

[2] Although Hewes argues that a Fourth Amendment violation provides the basis for her first § 1983 claim, the amended complaint does not allege any facts that establish a plausible Fourth Amendment violation because none of the alleged facts support a finding that an unlawful search or seizure occurred.  Nor does Hewes cite to any case law to support her argument that the Fourth Amendment provides a right to bodily autonomy and integrity.

### a. State-Created Danger

Because Hewes's state-created-danger claim does not assert that Pangburn's actions and inactions resulted from a municipal custom or policy, the Brewer School Department cannot be liable under this theory and only Pangburn's individual liability is at issue.

In general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989).  However, the U.S. Supreme Court has indicated that an affirmative duty may arise when the state creates the danger to an individual.  *See id.* at 201 ("While the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.").  The First Circuit has recognized the state-created-danger doctrine, outlining the standard as follows:

> [T]he plaintiff must establish: (1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff; (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public; (3) that the act or acts caused the plaintiff's harm; and (4) that the state actor's conduct, when viewed in total, shocks the conscience.

*Irish v. Fowler*, 979 F.3d 65, 75 (1st Cir. 2020).  The Defendants make no argument regarding the second and third elements.  I therefore focus my analysis on the first and fourth elements.

Turning to the first element, in *Welch v. City of Biddeford Police Department*, the First Circuit clarified that an affirmative act does not need to have greatly

enhanced the danger to the plaintiff; instead, an affirmative act that simply enhances the danger to the plaintiff satisfies the first factor.  12 F.4th 70, 76-77 (1st Cir. 2021) (clarifying that "the first prong of the state-created danger claim is whether a state actor's affirmative act 'created or enhanced' a danger to the plaintiffs," and that this may be a simple, rather than great, enhancement (quoting *Irish*, 979 F.3d at 75)).

As to the fourth factor, "[w]here officials have the opportunity to make unhurried judgments, deliberate indifference may shock the conscience, particularly where the state official performs multiple acts of indifference to a rising risk of acute and severe danger."  *Irish*, 979 F.3d at 75.  "To show deliberate indifference, the plaintiff must, at a bare minimum, demonstrate that the defendant actually knew of a substantial risk of serious harm and disregarded that risk."  *Id*.  Because the facts alleged in the amended complaint show that Pangburn had the opportunity to make an unhurried judgment regarding whether and how to investigate the rumors Hewes reported to her, the deliberate indifference standard applies here.

The facts considered in *Doe v. Regional School Unit No. 21* are similar to Hewes's allegations.  Docket No. 2:19-00341, 2020 WL 2820197 (D. Me. May 29, 2020).  In *Regional School Unit No. 21*, a high school student alleged that he was sexually abused by his health teacher, who supervised his study hall and "over[saw] and assist[ed] [the plaintiff] with his studies."  *Id*. at *1.  After rumors began to circulate through the school that the teacher was engaged in sexual misconduct, two Assistant Principals opened an investigation.  *Id*.  They interviewed Doe, who "denied that any sexual misconduct had taken place because he was concerned about potential criminal and employment repercussions for [the teacher]."  *Id*.  After the

investigation, Doe continued to attend study hall in the teacher's classroom, and the sexual abuse continued. *Id.* The Court denied the defendants' motion to dismiss the plaintiff's claim under a state-created-danger theory, reasoning that the actions of the school administrators could have exposed the plaintiff to additional abuse and may have constituted conscious-shocking behavior. *Id.* at *3.

Like Hewes, the plaintiff in *Doe* had denied rumors of a sexual relationship between himself and a teacher, and the school's subsequent failure to protect him from that teacher was the basis for the state-created-danger claim. Hewes contends that Pangburn's limited investigation of the rumors regarding Hewes and Pangburn's relationship was an affirmative act that enhanced the danger to Hewes by subjecting her to sexual abuse by Pushard for an additional month following her disclosure of the rumors. Pangburn is alleged to have conducted what was, at most, a limited investigation of the rumors reported by Hewes—consisting of no more than a single conversation with the Athletic Director's secretary. Her decision to conduct no more than a perfunctory investigation was an affirmative act that might have very well enhanced the danger facing Hewes.

As to the fourth element—whether the actor's conduct, when viewed in total, shocks the conscience—the Defendants contend that Pangburn did not have actual knowledge of Pushard's abuse of Hewes based on her conversation with Hewes, and that she therefore did not act with deliberate indifference in failing to investigate the rumors. A fact-finder could, however, conclude that Hewes's report to Pangburn was sufficient to put Pangburn on notice of a substantial risk that the rumors were true and Hewes was, in fact, being abused. Given the severity of the potential harm

associated with the ongoing sexual abuse of a minor student by an employee, a fact-finder might also conclude that Pangburn should not have ended her inquiry based on nothing more than Hewes's denial of the rumors and the Athletic Director's secretary's assessment of Pushard.   Viewing the allegations in the light most favorable to Hewes as the non-moving party, Pangburn had reason to appreciate the need to make a more searching inquiry in response to the information she received. *See Regional School Unit No. 21*, 2020 WL 2820197 at *3 (denying the school district's motion to dismiss a state-created-danger claim because notification of rumors of a sexual relationship between a student and teacher were sufficient to put school administrators on notice that an investigation was required, and that the student's denial of the relationship should not have ended the investigation).

The First Circuit has held, in state-created-danger cases involving police officers, that officers' adherence to "proper police procedure" is relevant in determining whether they acted with deliberate indifference. *Welch*, 12 F.4th at 76. The existence of the Brewer School Department's Affirmative Action Plan, and the question of whether Pangburn complied with it, is analogous to an officer's failure to follow proper police procedures.  The Department's Affirmative Action Plan required that Pangburn begin an investigation after being notified of the potential sexual assault of a student.  The amended complaint alleges that Pangburn failed to adhere to the Department's stated policy by not notifying the Superintendent and thus trigger an official investigation.  Accordingly, Hewes's assertions, which I must accept as true as this stage, are sufficient to allege the possibility that the decision to end

the investigation was so deficient as to shock the conscience and thus constitute deliberate indifference.

At this Rule 12(b)(6) motion stage, Hewes has stated sufficient facts to plausibly allege that Pangburn's decision to conduct no more than a cursory investigation of the rumors of Pushard's sexual relationship with Hewes was an affirmative act that was made with deliberate indifference. Thus, the motion to dismiss this count under the state-created-danger theory is denied as to Pangburn.

### b. Failure to Train/Failure to Supervise

"Triggering municipal liability on a claim of failure to train requires a showing that municipal decisionmakers either knew or should have known that training was inadequate but nonetheless exhibited deliberate indifference to the unconstitutional effects of those inadequacies." *Haley v. City of Boston*, 657 F.3d 39, 52 (1st Cir. 2011). As the First Circuit has observed, "[t]he liability criteria for 'failure to train' claims are exceptionally stringent." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998). A municipality is only liable for failure to train or supervise under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom" the municipal agents come into contact. *DiRico v. City of Quincy*, 404 F.3d 464, 468 (1st Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Additionally, "[t]o succeed on a supervisory liability claim, a plaintiff not only must show deliberate indifference or its equivalent, but also must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." *Est. of Bennett v. Wainwright*, 548 F.3d 155, 177 (1st Cir. 2008) (quoting *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 582 (1st Cir. 1994)). For reasons that I will explain, Hewes

13

has failed to allege facts to support a plausible failure-to-train-and-supervise claim[3] against the Department or Pangburn.

Hewes asserts repeatedly that the Department did not have a policy addressing inappropriate interpersonal or sexual relationships between teachers and students and that, for this reason, it failed to train its staff. However, Hewes attached the Brewer School Department's Affirmative Action Plan as an exhibit to her amended complaint, and the plan clearly prohibits sexual harassment of students by school personnel.

In addition, Hewes's factual allegations regarding the alleged failure to train are conclusory and vague, to the point that they do not support a plausible claim for relief. She alleges that the Defendants did not disseminate the Affirmative Action Plan to students but does not contend that the plan was not distributed to staff, nor does she assert that school employees were not trained to follow the plan. Hewes goes on to contend that Pangburn and other school employees did not follow the school's policy, but the amended complaint does not allege facts indicating that the Department failed to adequately train its employees. Thus, Hewes's claim cannot proceed against the Department because the amended complaint fails to allege facts that would establish that the Department was deliberately indifferent in its efforts to train its employees.

---

[3] Hewes's amended complaint asserts that the Department violated § 1983 by failing to supervise Pushard and thus allowed him to sexually assault her. This contention is unsupported by facts in the amended complaint and is not developed in Hewes's pleadings. Because Hewes has alleged no facts which plausibly allege that the Department was deliberately indifferent in its supervision of Pushard or that this indifference was affirmatively connected to Pushard's abuse of Hewes, this claim cannot proceed.

The motion to dismiss on this count is granted as to Small and the Brewer School Department but denied as to Pangburn under the state-created-danger theory.

## 2.  42 U.S.C.A. § 1983 Due Process and Equal Protection (Counts II and III)

Hewes makes identical and cursory assertions for her equal protection and due process clause claims, which are that "[t]he school officials and Defendants knew that [she] was a minor female student, and not capable of making informed choices, and that she was being coerced and/or threatened by Defendant B. Pushard, which a minor female student, required protection therefrom" and that this failure deprived her of "the rights, privileges and immunities secured by the United States Constitution."  ECF No. 4 ¶¶ 204-05, 207-08.  She has not, however, alleged sufficient factual allegations to support a plausible claim for relief on either count.

Although an Equal Protection claim can coexist with a Title IX deliberate indifference claim, "[a] plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009) (citing *Monell*, 436 U.S. at 694).  Hewes does not allege facts to plausibly make out such a claim.  In furtherance of Hewes's Equal Protection claim, she argues that the Brewer School Department and Individual School Defendants did not have a policy forbidding sex-based harm, in violation of state and federal law.  As detailed above, this is belied by Hewes's inclusion of the policy prohibiting sexual harassment of students by Brewer School

Department employees with her amended complaint.  Accordingly, the motions to dismiss are granted with respect to Counts II and III of the amended complaint.

**B.    Title IX Claims (Counts VII, VIII, IX, X)**

Hewes alleges that the Brewer School Department and Individual School Defendants violated Title IX under theories of: (1) deliberate indifference to Pushard's abuse of Hewes; (2) intentional sex-based discrimination; (3) strict liability; and (4) retaliation.  For the foregoing reasons, the deliberate indifference and retaliation claims withstand the Brewer School Department's Motion to Dismiss.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.A. § 1681(a) (West 2022).  An individual has a private right of action against an educational institution that violates the provisions of Title IX. *Franklin v. Gwinnet Cnty. Pub. Sch.*, 503 U.S. 60, 76 (1992).  An individual may bring a private cause of action when "a Title IX funding recipient is deliberately indifferent to known acts of sexual harassment of a student by a teacher" or "when a Title IX funding recipient is deliberately indifferent to known acts of harassment in its programs or activities, including severe and pervasive acts of harassment perpetrated by fellow students in circumstances under the recipient's substantial control." *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 7 (1st Cir. 2020) (citing *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644-46 (1999)).  An institution also violates Title IX by intentionally discriminating based on sex, which includes

"retaliation against a person because that person has complained of sex discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).

Contrary to Hewes's assertion, Title IX does not provide an implied private right of action against individuals who work for an educational institution that is subject to Title IX.[4]   Title IX's "implied private right of action allows an aggrieved party to seek money damages against an educational institution that receives federal funds but not against individuals who merely work for such an institution." *Santiago v. Puerto Rico*, 655 F.3d 61, 73 (1st Cir. 2011) (footnote omitted).   Therefore, the Title IX claims against the Individual School Defendants are dismissed.

### 1.  Strict Liability (Count IX)

Hewes contends that the Department is strictly liable for Pushard's abuse because Pushard was an employee or contractor of the school and Pangburn allegedly knew of the abuse and failed to stop it.   However, "strict liability is not part of the Title IX contract." *Canutillo Indep. Sch. Dist. v. Leija*, 101 F.3d 393, 399 (5th Cir. 1996).   *Gebser* precludes strict liability because the Court held that a school district cannot be liable under Title IX unless it has actual notice of the sexual harassment and an opportunity to respond and address the abuse.   524 U.S. at 285-89.   Thus, Hewes's claim for Title IX Strict Liability is dismissed.

---

[4]  Hewes cites to *Brown v. Hot, Sexy, and Safer Productions, Inc.*, 68 F.3d 525 (1st Cir. 1975), for this proposition, but that case does not support this theory of liability.   Although *Brown* confirms that a school may be liable under Title IX for conduct of outside vendors or contractors that is sanctioned by the school, it does not hold that there is a private cause of action against individuals under Title IX.

## 2.  Intentional Sex-Based Discrimination (Count VII)

Under Title IX, schools receiving federal education funding have a duty not to discriminate on the basis of sex.  20 U.S.C.A. § 1681(a).  Sexual harassment of a student by a teacher is sex discrimination under Title IX.  *See Franklin*, 503 U.S. at 75.  A plaintiff may seek a private damages remedy for intentional discrimination under Title IX if the school district "engages in intentional conduct" that violates Title IX.  *Davis*, 526 U.S. at 642.  Hewes's claim of intentional discrimination under Title IX rests on conclusory assertions that "[t]he Defendants have a policy and/or practice that discriminated against [her] based on her sex," ECF No. 4 ¶ 235, and "[t]he [Brewer School Department]'s Policy required the school to take action in this matter and the school took none, therefore, the Defendant's [sic] are liable for their intentional discrimination of [her], based on her gender and age," *id.* ¶ 236.  The amended complaint does not include any facts that would support these statements.  Instead, the amended complaint contains several largely conclusory and, at times, contradictory contentions; namely, that the Brewer School Department: (1) adopted inadequate policies to address sexual harassment; (2) did not have a policy to address sexual harassment of students by teachers; (3) had a policy addressing sexual harassment that required a response and investigation, which Pangburn failed to initiate; and (4) that the Brewer School Department's policy addressing sexual harassment treated sexual harassment differently than other forms of harassment, which is itself sex-based discrimination.  These contentions, absent factual support, do not plausibly support a claim of intentional sex-based discrimination.  Therefore, this claim is dismissed.

### 3. Retaliation (Count X)

The three elements of a Title IX retaliation claim are: (1) a plaintiff's engagement in protected conduct; (2) adverse action against the plaintiff; and (3) a causal link between the protected conduct and the adverse action. *Theidon v. Harvard Univ.*, 948 F.3d 477, 505 (1st Cir. 2020). An adverse action is one that is severe enough to "dissuade[] a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Hewes asserts that she was subjected to retaliation after she provided notice to the Defendants and filed her complaint.

Specifically, the amended complaint alleges that:

> After [Hewes] placed the Defendants on notice of the above captioned matter, as well as after her initial complaint was filed, David Utterback, the Brewer High School Athletic Director, on behalf of the Defendants, approached another school employee who is a friend and former classmate of Libby's and asked this person to speak with school administrators as part of an investigation into [Hewes]; Utterba[]ck was looking for information and witnesses regarding [her].

> This person refused, however, after relentless badgering by Utterback, she agreed to answer his questions on the spot; Utterback asked this person about [Hewes] and her sexual history as well as other information that was clearly intended to smear [her] reputation and character.

ECF No. 4 ¶¶ 245-46. Viewing these facts in the light most favorable to Hewes, as I must, I find that Hewes has alleged sufficient facts to preclude the dismissal of her Title IX Retaliation claim. The purported questioning of Hewes's friend by Utterback, the Athletic Director, took place after Hewes filed her complaint, and when she was no longer a student at Brewer High School; thus, there is no apparent educational

purpose for the inquiry.  At the motion to dismiss stage, the amended complaint's allegations are sufficient to make out a causal link between Hewes's complaint and Utterback's questioning.  Further, the Department does not contend that there is an innocent explanation for the questioning.  Instead, it puts forth a conclusory assertion that Utterback's questions did not constitute an adverse action.  However, a reasonable person in Hewes's position could be dissuaded from filing and then prosecuting a sexual harassment complaint once informed that a school employee was seeking information regarding the person's sexual history.  Thus, Hewes has alleged a plausible retaliation claim and her Title IX claim under this theory of liability can proceed against the Department.

### 4.  Deliberate Indifference (Count VII)

"[A] Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference."  *Fitzgerald*, 555 U.S. at 257 (citing *Gebser*, 524 U.S. at 290).  "To succeed in bringing such a 'deliberate indifference' claim, a plaintiff must show that (1) 'he or she was subject to "severe, pervasive, and objectively offensive" sexual harassment'; (2) 'the harassment caused the plaintiff to be deprived of educational opportunities or benefits'; (3) the funding recipient was aware of such harassment; (4) the harassment occurred 'in [the funding recipient's] programs or activities'; and (5) the funding recipient's response, or lack thereof, to the harassment was 'clearly unreasonable.'"  *Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018) (alteration in original) (quoting *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007)).  A damages remedy under Title IX does not lie "unless an

official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290.   Courts have generally interpreted actual knowledge to mean "knowledge of a substantial risk of abuse to students" that would make it reasonable for the school official to implement remedial measures to address the harassment. *Doe v. Bibb Cnty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015) (collecting cases)[5].  "A school official is an 'appropriate person' to receive notice of harassment, for the purpose of determining liability under Title IX, when that person, 'at a minimum, has the authority to institute corrective measures' and has 'customary disciplinary authority' over the alleged harasser." *McCann ex rel. J.M. v. York Sch. Dep't*, 365 F. Supp. 3d 132, 142 (D. Me. 2019) (quoting *Santiago v. Puerto Rico*, 655 F. 3d 61, 74 (1st Cir. 2011)).   *Gebser* also explains that the failure to respond adequately "must amount to deliberate indifference to discrimination."  524 U.S. at 290.

Regarding the first of the five elements, Hewes's amended complaint amply lays out factual allegations that Pushard subjected her to sexual abuse for two years.

---

[5] Although the Title IX regulations were substantially revised in 2020, the Department of Education's Office for Civil Rights has clarified that "the Department will not apply or enforce the new regulations retroactively," such that they do not apply to conduct that occurred prior to the August 14, 2020 effective date of the new regulations.  U.S. Dep't of Educ., Off. for C.R., *Part 1: Questions and Answers Regarding the Department's Title IX Regulations* (Jan. 15, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-part1-20210115.pdf.  Pushard's alleged abuse of Hewes took place from 2015 to 2017.  Therefore, the new Rule does not apply, and I analyze Hewes's claims against the Brewer School Department under the prior version of the Title IX Rule and utilize the judicial interpretation of "actual knowledge" rather than the regulatory definition provided in the 2020 regulation.

The Defendants do not dispute the severity of the abuse Hewes experienced.  The first element is therefore satisfied.  For the second element, Hewes contends that she has "struggled with her mental health and emotional well-being as a result of all of the Defendants' actions," ECF No. 4 ¶ 172, and this plausibly gives rise to an inference that the abuse interfered with her education.  Further factual development is required to ascertain whether Hewes was deprived of educational benefits and opportunities; however, for purposes of the motions to dismiss, this element is satisfied.

The third element requires Hewes to put forth facts showing that an appropriate person had actual knowledge of Pushard's abuse of her.  She contends that Pangburn, as the school principal, qualifies as an appropriate person because she had control and oversight over Pushard due to his employment relationship with the Department.[6]  The Brewer School Department disputes that Hewes has alleged sufficient facts to demonstrate that Pangburn, or any other school administrator, had the requisite authority to take corrective action against Pushard.  Hewes contends that because Pangburn was the principal at Brewer High School when Hewes reported that rumors about her relationship with Pushard were spreading, Pangburn had the authority and ability to act to protect Hewes from harm.  Hewes also asserts that Pushard was "an adult school employee/contractor," although she does not explain his employment relationship with the Department during this period.

---

[6] Hewes also alleges that Pushard gave her a ride home after softball practice in April 2015, and that both her coach and Defendant Small knew about this occurrence but neither notified Brewer School Department administrators or Hewes's parents.  Under the requirements of Title IX, neither the coach (who is not named in the lawsuit) nor Small would be an "appropriate person," as the facts do not allege that either had authority over Pushard.  *See McCann*, 365 F. Supp. 3d at 142 (quoting *Santiago*, 655 F. 3d at 74).

Additional factual development is required to flesh out the contours of Pushard's employment relationship with the Department and to determine whether Pangburn had control and oversight over him.  However, when viewing the facts in the light most favorable to Hewes as the non-moving party, it is reasonable to infer that the school principal had the authority to take action against Pushard regardless of his actual employment status given that he was on the school's premises and interacting with students with Pangburn's knowledge.

Fourth, Hewes asserts that because she met with Pangburn in April 2017 to discuss the widespread rumors about a sexual relationship, Pangburn had actual knowledge of the abuse and her response was deliberately indifferent.  Hewes argues that these facts set forth a plausible claim of deliberate indifference because Pangburn was put on notice of a possibility of ongoing sexual abuse and harassment of a student but failed to follow the requirements of the Department's policy and of Title IX by not investigating the rumors.

The amended complaint's allegation that Pangburn was informed of the rumors of an ongoing sexual relationship between a student and an adult working at the school is sufficient to satisfy the actual knowledge standard because Pangburn received information which, at a minimum, suggested a substantial risk of ongoing abuse.

To establish the fourth element, Hewes alleges that at least some of the abuse occurred on school property.  "Where . . . the misconduct occurs during school hours and on school grounds . . . the misconduct is taking place 'under' an 'operation' of the

funding recipient." *Davis*, 526 U.S. at 646.  Thus, the fourth element is satisfied for purpose of the motion to dismiss.

Finally, Hewes has alleged that Pangburn was notified of the rumors that Pushard and Hewes were engaged in a sexual relationship and did not adequately investigate those rumors, which in turn allowed Pushard to continue his abuse of Hewes.  Viewing the alleged facts in the light most favorable to Hewes, this response satisfies the clearly unreasonable standard.

Because Hewes has alleged sufficient facts to support an inference that the Department acted with deliberate indifference, her Title IX claim against the Department under this theory of liability may proceed.

## C.   Tort Claims (Counts IV, V, VI, XI, XII, XIII, and XVII)

Counts IV (assault and battery), V (general negligence), VI (negligence – respondeat superior/agency), XI (negligent hiring, training, supervision and retention), XII (negligent infliction of emotional distress), XIII (intentional infliction of emotional distress), and XVII (invasion of privacy) allege state-law tort claims.  The Maine Tort Claims Act ("MCTA") "confers immunity on governmental entities for all tort claims seeking recovery of damages," with several carefully cabined exceptions that are not relevant here.  *Searle v. Town of Bucksport*, 2010 ME 89, ¶ 9, 3 A.3d 390, 394.  School districts are statutorily defined as governmental entities under the MTCA.  14 M.R.S.A. § 8102(2), (3) (West 2022).  A governmental entity waives its immunity under the MTCA "to the extent it obtains insurance that provides coverage in areas where the entity would normally enjoy immunity."  *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 25, 803 A.2d 1018, 1025.

The MTCA also governs claims against government employees and provides that "employees of governmental entities shall be absolutely immune from personal civil liability for . . . [p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1) (West 2022). The MTCA requires that the governmental entity that employs the defendant be provided notice of the claim before the suit is filed, and, where the plaintiff was a minor at the time the cause of action accrued, notice must have been provided within 365 days of the minor's 18th birthday "or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 365-day limit." 14 M.R.S.A. § 8107 (West 2022). Then, the plaintiff must allow the governmental entity 120 days to respond to the claim before filing suit. 14 M.R.S.A. § 8108 (West 2022). If the cause of action accrues while the plaintiff is a minor, the action must be brought within two years of the minor's 18th birthday. 14 M.R.S.A. § 8110 (West 2022).

### 1. Tort Claims Against the Brewer School Department

The Department asserts, and Hewes concedes, that the Department is immune from liability under the MTCA. Additionally, the Brewer School Department provided a copy of its insurance policy which provides that "[n]o coverage applies to any claim for which there would be immunity under the Maine Tort Claims Act in the absence of coverage." ECF 43-2 at 3. Hewes does not contend that the Department has otherwise waived its immunity. Therefore, the tort claims against the Department are dismissed.

### 2.  Tort Claims Against the Individual School Defendants

The Individual School Defendants acknowledge that Hewes served notice on the Brewer School Department in April 2021, but assert that the content of the notice was not in compliance with 14 M.R.S.A. § 8108.

The statute required Hewes to wait 120 days from the purported notice date of April 15, 2021 before filing, which would have been August 13, 2021.  Hewes filed her complaint on June 18, 2021.  Thus, even if Hewes had properly given notice to the Department, she filed suit too soon after providing that notice.  "[S]ection 8108 . . . acts as a jurisdictional bar if a plaintiff fails to wait 120 days before filing suit." *Learnard v. Inhabitants of Town of Van Buren*, 164 F. Supp. 2d 35, 40 (D. Me. 2001). Additionally, under 14 M.R.S.A. § 8110 (West 2022), Hewes was required to commence the action within two years of her eighteenth birthday, a deadline of May 11, 2021, but she did not file suit until June 18, 2021.  Because she has not pleaded facts demonstrating that she commenced the action by May 11, 2021, nor could she have given the purported notice date, her tort claims are barred under § 8110.  Thus, Hewes's Maine tort claims against the Individual School Defendants are barred by operation of state law and are dismissed.

## D.  Maine Constitutional and Civil Rights Act Claims (Counts XIV, XV, XVI, and XVIII)

The Maine Constitution dictates that "[a]ll people are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Me. Const.

art. I, § 1.   Additionally, "[n]o person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of that person's civil rights or be discriminated against in the exercise thereof." *Id.* § 6-A.  The Maine Civil Rights Act, 5 M.R.S. § 4682 (West 2022), like § 1983, "authorizes civil actions by private parties for intentional violations of a person's constitutional rights through actual or threatened violence." *Fowles v. Stearns*, 886 F. Supp. 894, 901 (D. Me. 1995).  Hewes's amended complaint alleges that all of the Defendants interfered or attempted to interfere with her rights under the Maine Constitution through physical force or violence or threat of the same; however, she does not plead any supporting facts as to these allegations against the Department or Individual School Defendants.

The Maine Civil Rights Act does not apply to claims where there is no claim of real or threatened violence.  *Bagley v. Raymond Sch. Dep't*, 1999 ME 60, ¶ 10 n.5, 728 A.2d 127, 131 n.5. ("The Maine Civil Rights Act . . . applies when there has been the use or threat of 'physical force or violence' in an effort to interfere with the exercise of a constitutional right."); *Andrews v. Dep't of Env't Prot.*, 1998 ME 198, ¶ 23, 716 A.2d 212, 220.

The amended complaint does not allege facts that any Defendant other than Pushard used violence or the threat of violence against Hewes.   Therefore, the motions to dismiss the counts alleging violation of Hewes's state constitutional rights under the Maine Civil Rights Act are granted.

27

## IV.  CONCLUSION

For the foregoing reasons, the Individual School Defendants' Motion to Dismiss (ECF No. 42) is **GRANTED IN PART** and **DENIED IN PART** as follows:

A.  The motion is **GRANTED** as to: Counts I (§ 1983 State-Created Danger) as to Defendant Small, II-III (§ 1983 Due Process and Equal Protection); XIV-XVI, XVIII (Maine Constitutional Claims); IV-VI, XI-XIII, and XVII (Tort Claims); and VII-X (Title IX Claims).

B.  The motion is **DENIED** as to: Count I (§ 1983 State-Created Danger) as to Defendant Pangburn.

The Brewer School Department's Motion to Dismiss (ECF No. 43) is **GRANTED IN PART** and **DENIED IN PART** as follows:

A.  The motion is **GRANTED** as to: Counts I-III (§ 1983 Claims); XIV-XVI, XVIII (Maine Constitutional Claims); IV-VI, XI-XIII, and XVII (Tort Claims); and VIII (Title IX Intentional Discrimination) and IX (Title IX Strict Liability).

B.  The motion is **DENIED** as to: Count VII (Title IX Deliberate Indifference), and Count X (Title IX Retaliation).

**Dated this 18th day of March, 2022.**

_____
**/s/ Jon D. Levy**
**CHIEF U.S. DISTRICT JUDGE**
