UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Libby Hewes, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **Case No. 1:21-cv-00125-JDL** |
| | ) |
| Benjamin Pushard, et al., | ) |
| | ) |
| Defendants. | ) |

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS SAMANTHA PANGBURN AND THE BREWER SCHOOL DEPARTMENT WITH INCORPORATED MEMORANDUM OF LAW**

Defendants Brewer School Department ("BSD") and Samantha Pangburn (collectively the "School Defendants") move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on Counts I, VII and X, the only claims against them remaining in Plaintiff Libby Hewes's Amended Complaint. The reason for this motion, as set forth more fully below and in the accompanying statement of material facts is that there is no material issue of fact and the School Defendants are entitled to judgment as a matter of law.

### INTRODUCTION

This case arises as a result of an illicit sexual relationship between Plaintiff Libby Hewes, a minor, and Defendant Benjamin Pushard, an adult. This relationship started in the spring of 2015 when Hewes was in 8th grade and a student at the Brewer Community School and ended in the spring of 2017 when she was in 10th grade at Brewer High School. While the relationship was ongoing, Pushard was not an employee of BSD and in fact, there is no dispute that Pushard has

1

never been an employee of BSD. His only direct connection with BSD was as a volunteer coach. Hewes has admitted that the only person other than herself and Pushard who knew about this relationship was a friend. She has admitted that when he served as a volunteer coach, Pushard never coached her. And she has admitted that when she heard that rumors were going around the school that she had a 22 year old boyfriend (at a time when Pushard was 22), she went to Pangburn who was the Assistant Principal at BHS and told her that the rumors were not true. Hewes nonetheless seeks to hold the Brewer School Department and Samantha Pangburn responsible for damages she alleges were caused by her relationship with Pushard.

## UNDISPUTED FACTS

Defendant Benjamin Pushard started a sexual relationship with Hewes in the spring of 2015. SMF ¶ 15. At the time, Pushard was 21 years old and Hewes was 13 years old. SMF ¶¶ 3, 33. Pushard was not employed by the Brewer School Department but he was serving as a volunteer coach for the junior varsity baseball team at Brewer High School. SMF ¶14.

The relationship between Pushard and Hewes continued during Hewes' freshman and sophomore years at Brewer High School. SMF ¶¶15, 17. Pushard was a volunteer coach for junior varsity baseball team during Hewes' freshman year at Brewer High School but not during her sophomore year. SMF ¶11. Pushard never coached Hewes. SMF ¶12.

According to Hewes, other than a friend of hers, no one knew about her relationship with Pushard. SMF ¶16. Approximately one month before the relationship broke off, a classmate named Nate Laskey teased Hewes about having a 22 year old boyfriend during gym class. SMF ¶17. Hewes texted Pushard who told her she needed to talk to Assistant Principal Pangburn to "shut the rumors down immediately" because he could get into a lot of trouble. SMF ¶18. As instructed, Hewes reported to Pangburn that Laskey had said "why don't you go f*** your 22 year

old boy friend." SMF ¶22. She told Pangburn that the rumors were not true and led Pangburn to believe that what was bothering her was that untrue rumors were being spread about her because she liked one of Laskey's friends. SMF ¶23.

After receiving Hewes' report, Pangburn followed up with Laskey and with the physical education teacher. SMF ¶¶28-30. Laskey essentially admitted that he had said what he said to bother Hewes. SMF ¶29. The gym teacher gave her no information. SMF ¶30. Pangburn encouraged Hewes to let her know if there were any other problems and Hewes never mentioned it again. SMF¶26.

Hewes graduated in 2019. SMF ¶4. Two years later, BSD Athletic Director David Utterback approached two friends of Hewes and asked if they knew whether Hewes was together with BSD employee Nick Arthers. SMF ¶34.

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if a reasonable jury could resolve the point in favor of the nonmoving party. A fact is material if its existence or nonexistence has the potential to change the outcome of the suit. *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (citations and quotation marks omitted). The Court views the record in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 87 (1st Cir. 2020). A nonmovant plaintiff "bears 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (quoting

*Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir. 2003)). The Court "afford[s] no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Tropigas de Puerto Rico, Inc.*, 637 F.3d at 56 (quotation marks omitted).

## II. THE RECORD EVIDENCE DOES NOT SUPPORT PLAINTIFF'S § 1983 STATE-CREATED DANGER CLAIM (COUNT I).

Count I of the operative complaint is a Section 1983 claim asserted against Pangburn for violation of Hewes' substantive due process right to bodily integrity. In *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court held that generally "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." The Supreme Court went on, however, to observe that an affirmative duty may arise when the state creates the danger to an individual. *See id.* at 201. As this Court explained in *Johnson v. City of Biddeford*, No. 2:17-CV-00264-JDL, 2023 WL 2712861, at *12 (D. Me. Mar. 30, 2023):

> Under this doctrine, "although the state's failure to protect an individual against private violence does not generally violate the guarantee of due process, it can where the state action 'affirmatively place[s] the plaintiff in a position of a danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (alteration in original) (quoting *Wood*, 879 F.2d at 589-90). Courts that have recognized the doctrine "require[ ] that the defendant's acts be highly culpable and go beyond mere negligence." *Irish II*, 979 F.3d at 74.

Plaintiff's claim against Pangburn is under a state-created danger theory. *See* Order on Motions to Dismiss, Doc. 63, PageID# 505. The First Circuit has held that in order to prevail on a state-created danger theory

> [t]he plaintiff must establish: (1) that a state actor or state actors affirmatively acted to create or enhance a danger to the plaintiff; (2) that the act or acts created or enhanced a danger specific to the plaintiff and distinct from the danger to the

4

general public; (3) that the act or acts caused the plaintiff's harm; and (4) that the state actor's conduct, when viewed in total, shocks the conscience.

*Irish v. Fowler,* 979 F.3d 65, 67 (1st Cir. 2020).

At the motion to dismiss stage, this Court permitted Plaintiff's state-created danger claim against Pangburn to proceed, concluding that Plaintiff had *pled* sufficient facts to support a theory that Pangburn took an affirmative act by conducting a limited investigation that enhanced the danger of further sexual abuse to Plaintiff. Discovery has not borne that allegation out and Pangburn is therefore entitled to summary judgment on Count I.

### A. Pangburn did not act affirmatively to create or enhance a danger to Plaintiff

In order to prevent parties from doing an "end run" around *DeShaney*, a plaintiff can only prevail on a state-created danger claim if it can prove that the defendant engaged in an *affirmative act* that either created or increased the danger plaintiff was subjected to. *Rivera v. Rhode Island*, 402 F.3d 27, 38 (1st Cir. 2005); *see also Ramos-Pinero v. Puerto Rico*, 453 F.3d 48, 55 n.9 (1st Cir. 2006) 1st Cir. 2006) ("[T]he absence of an affirmative act by the state in creating the danger is fatal to [a state-created danger] claim."). An omission or failure to act is not enough. *E.g. Hankey v. Town of Concord-Carlisle*, 136 F. Supp. 3d 52, 70 (D. Mass. 2015) ("Here, Plaintiff has not provided evidence that Defendants engaged in any affirmative act (as opposed to a failure to act) that created or enhanced the danger posed to Plaintiff by the student harassers. Rather, the conduct at issue is Defendants' inaction, including failure to effectively investigate, intervene, and prevent harm to Plaintiff."); *see also Brooks v. Knapp,* 221 Fed. Appx. 402 (6th Cir. 2006) ( Even where officers can be seen not only to have ignored or disregarded the risk of injury, but have condoned it is not enough."). Further, "[f]ailing to defuse a preexisting danger is not an affirmative act under the doctrine." *Doe v. Berkeley Cnty. Sch. Dist.*, 189 F. Supp. 3d 573, 577 (D.S.C. 2016).

5

As this Court noted *Cohen v. City of Portland*, No. 2:21-CV-00267-NT, 2022 WL 1406204, at *7 (D. Me. May 4, 2022):

> Because the line between an affirmative act and an omission may be difficult to draw, in determining the affirmative act question, courts in other jurisdictions have analyzed whether a government official's alleged specific act placed the individual 'in a position of relatively less safety than [he or she] enjoyed before the affirmative act.' " *Hayes v. Town of Dalton*, Case No. 3:21-cv-30055-KAR, 2022 WL 488466, at *6 (D. Mass. Feb. 17, 2022) (quoting *Doe v. Round Valley Unified Sch. Dist.*, 873 F. Supp. 2d 1124, 1132 (D. Ariz. 2012)).

Here, the only affirmative act Pangburn is even alleged to have engaged in was following up with Nate Laskey and the P.E. teacher after Hewes reported to her that Laskey was spreading false rumors about her. There can be no serious contention that Hewes, who had been in the relationship with Pushard for almost two years by then, was put in a more dangerous position by those two discussions. Plaintiff therefore cannot make out a claim against Pangburn under a state-created danger theory.

    B.  <u>Pangburn's conduct did not shock the conscience.</u>

In addition, there is no record evidence to support a claim that Pangburn's conduct was conscience shocking. Negligent conduct is categorically insufficient to shock the conscience. *DePoutot v. Raffaelly*, 424 F.3d 112, 119 (1st Cir. 2005) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). While deliberately indifferent behavior may suffice to shock the conscience when state actors have an opportunity to reflect before taking action, "deliberately indifferent behavior does not per se shock the conscience." *J.R. v. Gloria*, 593 F.3d 73, 80 (1st Cir. 2010). The First Circuit has held that "state officials must have been at least aware of known or likely injuries or abuse and have chosen to ignore the danger to the child" for deliberate indifference sufficient to shock the conscience to exist. *Id.* (citations omitted). Here, Pangburn's conduct unequivocally did not meet that standard.

In *Wadsworth v. Maine Sch. Admin. Dist. 40/Reg'l Sch. Unit 40*, No. 2:19-CV-00577-JAW, 2023 WL 2714027 (D. Me. Mar. 30, 2023) ("*Wadsworth I*"[1]), this Court recent addressed a state-created danger claim brought by a high school student against her school's social worker as a result of his response to sexual harassment perpetrated on her by the school principal. The social worker was aware that the principal had been texting the plaintiff regularly, that he called her pet names like "cupcake," that he often pulled her out of class and gave her gifts. *Id.* at *6. Rather than reporting this conduct or investigating further, when the plaintiff complained to the social worker that she was embarrassed by the attention, the social worker normalized the principal's conduct. He told her the principal was just trying to help her and when she questioned whether it was normal for the principal to discuss birth control with her and take her to an appointment to get birth control, the social worker told her that the principal was a father figure for her. *Id.* at * 9.

This Court frankly acknowledged that the social worker "exhibited extremely poor judgment in his assessment of and response to the situation." *Id.* at *34. It went on, however, to grant summary judgment to the social worker on the state-created danger claim because:

> this record would not allow a reasonable juror to conclude that he had the requisite knowledge for his behavior to shock the conscience. To show deliberate indifference, the plaintiff "must, at a bare minimum, demonstrate that [the defendant] actually knew of a substantial risk of serious harm ... and disregarded that risk." Irish, 979 F.3d at 74 (quoting Coyne v. Cronin, 386 F.3d 280, 288 (1st Cir. 2004)).

*Id.*

Clearly, if the social worker in *Wadsworth I* did not act with deliberate indifference even though he knew about the pet names, the extra attention, and was even told by the plaintiff that the harasser made her feel embarrassed but still did nothing, then Pangburn, who was affirmatively

---

[1] There were three different defendants in the Wadsworth case and the Court issued separate decisions on the summary judgment motions filed by each defendant. The decision relating to claims against the social worker defendant is referred to herein as "*Wadsworth I*" and the decision relating to claims against the school district is referred to as "*Wadsworth II*."

7

told that there was no truth to the rumor that Hewes reported to her did not either.

### III. PANGBURN IS ENTITLED TO QUALIFIED IMMUNITY.

Summary judgment should also be entered in favor of Pangburn on Count 1 of the Amended Complaint because she is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Supreme Court has instructed that "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quotation marks omitted). "The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed." *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021) (quotation marks omitted).

Courts determine the applicability of qualified immunity by engaging in a two-step inquiry. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). First, the court considers "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation." *Id.* (quoting *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014)). Second, the court must determine "whether the violated right was clearly established at the time that the offending conduct occurred." *Id.* The court can address the steps in either order. *Id.*

Here, Plaintiff must show that a reasonable person would have known that he or she was engaging in conscience-shocking behavior and creating or enhancing a danger to Plaintiff by

(despite Plaintiff's vehement denials about the veracity of the "rumors") speaking with the classmate who made the inappropriate comment to Plaintiff about the circumstances of that comment and then speaking with the P.E. teacher, particularly when neither of whom had any information that would have given the reasonable person actual knowledge of a substantial risk of serious harm. *See, e.g.*, *Mitchell v. Miller*, 790 F.3d 73, 78 (1st Cir. 2015). The United States Supreme Court has "'repeatedly told courts . . . not to define clearly established law at a high level of generality,' . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Although the court does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741 (citations omitted). "The salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (1st Cir. 2009.  Here, Plaintiff cannot point the Court to any First Circuit authority that would have put Pangburn on notice that if she failed to do a more in-depth investigation of Hewes' complaint that Nate Laskey was spreading false rumors about her, she would be violating Hewes' constitutional rights.  Pangburn is entitled to qualified immunity.

## IV. THE RECORD EVIDENCE DOES NOT SUPPORT PLAINTIFF'S TITLE IX DELIBERATE INDIFFERENCE CLAIM (COUNT VII).

"[A] Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). "To succeed in bringing such a 'deliberate indifference' claim, a plaintiff must show that (1) 'he or she was subject to "severe, pervasive, and

9

objectively offensive" sexual harassment'; (2) 'the harassment caused the plaintiff to be deprived of educational opportunities or benefits'; (3) the funding recipient was aware of such harassment; (4) the harassment occurred 'in [the funding recipient's] programs or activities'; and (5) the funding recipient's response, or lack thereof, to the harassment was 'clearly unreasonable.'" *Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018) (alteration in original) (quoting *Porto v. Town of Tewksbury*, 488 F.3d 67, 72–73 (1st Cir. 2007)).

A damages remedy under Title IX does not lie "unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser*, 524 U.S. at 290. Courts have generally interpreted actual knowledge to mean "knowledge of a substantial risk of abuse to students" that would make it reasonable for the school official to implement remedial measures to address the harassment. *Doe v. Bibb Cnty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015), *aff'd,* 688 F. App'x 791 (11th Cir. 2017) (collecting cases). "A school official is an 'appropriate person' to receive notice of harassment, for the purpose of determining liability under Title IX, when that person, 'at a minimum, has the authority to institute corrective measures' and has 'customary disciplinary authority' over the alleged harasser." *McCann on behalf of J.M. v. York Sch. Dep't*, 365 F. Supp. 3d 132, 142 (D. Me. 2019) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 74 (1st Cir. 2011)). The failure to respond adequately "must amount to deliberate indifference to discrimination." *Gebser*, 524 U.S. at 290.

  A. <u>The record does not support a claim that Pangburn had "actual knowledge" of sexual harassment.</u>

The only person Plaintiff has identified in this case as being on notice of her relationship with Pushard is Pangburn. There is, however, no record evidence to support a contention that

Pangburn knew of any acts of harassment, much less that she acted with deliberate indifference as is required for liability under Title IX. As the First Circuit stressed in *Santiago*, "[t]he deliberate indifference standard has considerable bite." 655 F.3d at 73. To establish deliberate indifference on the part of the funding recipient, a plaintiff must show actual knowledge of the harassment. *Id.* "This stringent requirement . . . eliminate[s] any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id.* (quotation marks omitted) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999)).

Actual knowledge means just that: actual knowledge of the sexual harassment itself, not merely reason to suspect harassment may be occurring. As the Eighth Circuit in *KD v. Douglas Cnty. Sch. Dist. No. 001*, 1 F.4th 591, 598 (8th Cir.), *cert. denied*, 142 S. Ct. 485 (2021), recently held, "favoritism towards the student; inordinate time spent with the student; unprofessional conduct towards the student; and vague complaints about the teacher's behavior toward the student . . . fall short of creating actual notice."

KD was a case in which a middle school student was sexually abused by a teacher and the school was sued under Title IX. The summary judgment record indicated that reports were made to administration that the student was spending excessive time with the teacher but nothing was done after the teacher responded that they were engaged in mentoring sessions. *Id.* at 596. In addition, there was evidence that it had been reported to administration that the teacher grabbed the student's phone out of her back pocket, was seen eating in his room with the student with lights dimmed, and called the student "sweetheart" and "Sunshine." *Id.* at 595–97. The Eighth Circuit nonetheless affirmed the trial court's entry of summary judgment in favor of the school on the Title IX claim, reasoning that although administration received complaints of inappropriate

conduct, none of these complaints alleged sexual abuse and thus they lacked actual knowledge that abuse was occurring.

The facts regarding notice to school personnel in *KD* are far worse than the facts of this case where at most the only evidence Plaintiff has is that she reported to Pangburn that Laskey had made a comment about Plaintiff having a boyfriend. Denying the truth of rumors about having a boyfriend does not provide "actual knowledge" of sexual harassment to Pangburn. Indeed, the only evidence supports that Pangburn *did not* have actual knowledge based on the April 2017 conversation with Plaintiff because Pangburn believed Plaintiff was telling the truth about the alleged rumors being untrue. SMF ¶¶22- 24. Compared to the facts of KD there can be no question that Pangburn did not have "actual knowledge" of sexual harassment.

Actual knowledge must be more than ambient "smoke" around a school. "Courts have generally interpreted 'actual knowledge' as requiring highly reliable and similar reports of inappropriate teacher behavior and, for example, 'rumors, investigations, and student statements' have been held not to constitute 'actual knowledge.'" *Wadsworth v. Maine Sch. Admin. Dist. 40/Reg'l Sch. Unit 40*, No. 2:19-CV-00577-JAW, 2023 WL 2574951, at *32 (D. Me. Mar. 20, 2023) (quoting *Doe v. Bradshaw*, 203 F. Supp. 3d 168, 185 (D. Mass. 2016)), *appeal docketed* Nos. 23-1400 & 23-1463 (1st Cir.).

*Wadsworth II* involved a high school principal who sexually harassed a female student. On the issue of actual notice, the summary judgment record contained evidence that the school's assistant principals knew that the principal was pulling the student out of class so frequently that teachers complained; that one of the them was present when the principal asked the student who the student was taking to prom; that the principal called the student "cupcake," asked about her prom dress; that one of the assistant principals stepped into a meeting the school social worker was

having with the student where the student confessed to being embarrassed by the nicknames the principal called her; and that one of them knew that the principal had asked the student to move in with the principal and his wife. *Wadsworth II*, 2023 WL 2574951, at *32-33. Despite all of this, the Court noted that while "there was some smoke regarding [the principal's] behavior, there is no evidence of the type of fire necessary to satisfy the 'actual notice' standard." *Id.* at *33. The Court concluded "that '[w]hile the school perhaps ought to have known that [the principal] was behaving inappropriately, given the quantity and consistency of rumors about him, even viewing the facts in the light most favorable to the plaintiff, it cannot be said that the school actually knew of his sexual harassment . . . ." *Id.* (quoting *Bradshaw*, 203 F. Supp. 3d at 185).

In contrast to the two assistant principals in *Wadsworth II,* Pangburn not only did not know about Hewes' relationship with Pushard but actually believed that rumors about her having a 22 year old boyfriend were false. Simply put, there is nothing in the record here to show that Pangburn had any knowledge, let alone "actual knowledge," that Pushard was sexually harassing Plaintiff. The Court should grant BSD summary judgment on Count VII of Plaintiff's amended complaint.

    B.  <u>No "appropriate person" had "actual knowledge" of any harassment.</u>

Furthermore, even if Pangburn had the requisite knowledge, BSD would still be entitled to summary judgment on the Title IX claim because Pangburn was not an "appropriate person" as a matter of law. "A school official is an 'appropriate person' to receive notice of harassment for the purpose of determining liability under Title IX when that person, 'at a minimum, has the authority to institute corrective measures' and has 'customary disciplinary authority' over the alleged harasser." *McCann*, 365 F. Supp. 3d at 142 (quoting *Santiago*, 655 F.3d at 74). Because different school districts have different structures, cases analyzing this issue often note that whether a particular school official qualifies as an "appropriate person" to receive notice of harassment under

13

Title IX is a fact-based and case-specific inquiry. *See*, *e.g.*, *Santiago*, 655 F.3d at 74 (holding that "[a] school principal *may* . . . be considered an appropriate person" where the alleged harasser is "subject to the principal's customary disciplinary authority" (emphasis added)); *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 457 (8th Cir. 2009) (recognizing "that the administration of a school and the roles that various persons fill therein vary from district to district" and, therefore, declining to "fashion a bright-line rule as to what job titles and positions automatically mark an individual as having sufficient authority or control for the purposes of Title IX liability"); *Murrell v. Sch. Dist. No. 1, Denver*, 186 F.3d 1238, 1247 (10th Cir. 1999) ("Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry"). In this case, BSD is entitled to summary judgment because the facts in the record establish that in her role as assistant principal, Pangburn did not have authority to impose discipline on Pushard even during the time he was a volunteer coach (which was a year before Hewes told her about the Laskey rumor). SMF ¶¶ 6-8. Only the Superintendent, BHS Principal, or BSD Athletic Director could impose discipline on Pushard as a volunteer coach. SMF ¶ 14. Thus, only the Superintendent, BHS Principal, or BSD Athletic Director were "appropriate persons" because they were the only ones who could have taken corrective action against Pushard. *See McCann*, 365 F. Supp. 3d at 142. There has been no evidence offered in discovery to show that any of those three had any information, let alone "actual knowledge," that Pushard may have been subjecting Plaintiff to sexual harassment. Plaintiff will be unable to point to any competent, admissible evidence to show that any of these "appropriate persons" had actual knowledge of the sexual harassment.

### V.  PLAINTIFF'S TITLE IX RETALIATION CLAIM FAILS AS A MATTER OF LAW

Plaintiff's final claim against BSD is a retaliation claim under Title IX. There are two material facts relevant to this motion for summary judgment: (1) Plaintiff was not a student at BSD when the alleged retaliation occurred, *compare* Amended Complaint ¶ 245 (alleged retaliation occurred after the initial complaint was filed) with SMF ¶ 4 (Plaintiff graduated in 2019); and (2) the sum total of the alleged retaliation was a question posed by the BSD athletic director to two of Hewes' friends about her relationship with a BSD employee *See* Amended Complaint ¶¶ 245, 246.

In order to maintain a Title IX claim, a plaintiff must be "excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiff's status as a non-student at the time of the alleged retaliation bars her from bringing a Title IX retaliation claim. The case law makes clear that Plaintiff lacks standing to bring a Title IX retaliation claim for an incident that occurred two years after she graduated and there are simply no facts to support that she was participating in BSD's educational programs or activities in other ways at the time. *See, e.g.*, *Rossley v. Drake Univ.*, 958 F.3d 679, 684 (8th Cir. 2020) ("Retaliation 'on the basis of sex' is not a sufficient condition for Title IX standing. . . . [I]f the action taken 'on the basis of sex' against the person did not exclude, deny, or subject the person to discrimination under an education program or activity, then the action cannot be brought under § 1681(a)."); *Doe v. Brown Univ.*, 896 F.3d 127, 133 (1st Cir. 2018) ("[H]er complaint did not allege that she participated or even would have participated in any of Brown's educational programs or activities. . . . [H]er complaint contains no factual allegation as to how Brown's deliberate indifference deprived Doe of access to the educational opportunities or benefits provided by Brown. Therefore, Doe's complaint, on

its face, fails to establish that she has been subjected to discrimination under Brown's education program or activity." (alterations, citations, and quotation marks omitted)); *Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 592–93 (N.D. Ill. 2021) ("[N]either *Jackson* nor the plain language of Title IX can be extended to provide statutory standing to non-students, non-employees who reported alleged sex discrimination against their patients.").

There are also unreported decisions in accord. *See, e.g.*, *Oldham v. Pennsylvania State Univ.*, No. 4:20-CV-02364, 2022 WL 1528305, at *18 (M.D. Pa. May 13, 2022) ("Penn State argues the Title IX claims should be dismissed because Oldham lacks standing to sue Penn State under Title IX: she was not a student or employee of the University at any time, nor was she a community member or otherwise attempting to avail herself of an educational program or activity under Penn State or Harris's control. The Court agrees." (alterations, footnotes, and quotation marks omitted)); *Arocho v. Ohio Univ.*, No. 20-4239, 2022 WL 819734, at *4 (6th Cir. Mar. 18, 2022) (affirming dismissal of Title IX claim by non-student where "Arocho was not paying Ohio University for its services, nor does she allege that she participated in or planned to participate in education programs such as taking Ohio University classes as a high school student to receive college credit. The amended complaint provides little to no information about the educational opportunities and vocational training activities of Ohio University that Arocho was deprived of participating in").

Furthermore, even if she had standing, on this record there is no evidence that Plaintiff suffered any adverse action, which is an essential element of Title IX retaliation claim. *See, e.g. Theidon v. Harvard Univ.*, 948 F.3d 477, 505 (1st Cir. 2020); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (stating similar elements but highlighting that the adverse action must be "*school-related* action" (emphasis added)); *see generally* 34 C.F.R.

§ 106.71(a).

## CONCLUSION

What Benjamin Pushard did to Libby Hewes when she was a minor and he was an adult was wrong and neither Samantha Pangburn nor anyone else at the Brewer School Department would ever claim differently. There is, however, no basis upon which a reasonable jury could hold the School Defendants liable for what happened. They are entitled to summary judgment on all claims remaining against them.

Dated: September 27, 2023                                        */s/ Melissa A. Hewey*
                                                                 Melissa A. Hewey
                                                                 *Counsel for Defendants Samantha Pangburn, and the Brewer School Department*

                                                                 DRUMMOND WOODSUM
                                                                 84 Marginal Way, Suite 600
                                                                 Portland, Maine 04101-2480
                                                                 (207) 772-1941
                                                                 mhewey@dwmlaw.com