UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| LIBBY HEWES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00125-JDL |
| | ) |
| BENJAMIN PUSHARD, et al., | ) |
| | ) |
| Defendants. | ) |

**OPPOSITION TO PLAINTIFF'S ADDITIONAL
STATEMENT OF MATERIAL FACTS OF
DEFENDANTS SAMANTHA PANGBURN AND BREWER SCHOOL DEPARTMENT**

1. Plaintiff Libby Hewes was a minor student at Brewer High School and participated in various school sports. Affidavit of Catherine Hewes ¶¶3-4; Doc. 156-2, #1129.

**Admitted.**

2. Plaintiff was introduced to Benjamin Pushard by Brewer School Department Coach Morgan Small approximately July 2014. Doc. 156-2, #1115; 1145-1146; Doc. 156-9, #1558; Doc. 156-11, #1884; Doc. 158-2, #2591-2592.

**Admitted.**

3. The sexual assaults on Plaintiff by Benjamin Pushard began approximately April 2015. Doc. 156-2, #1115; Doc. 156-11, #1884; Doc. 158-2, #2591.

**Objection.** The citation to statements made by ADA Lewis during Pushard's Rule 11 hearing should be stricken as inadmissible hearsay. *See, e.g. Net 2 Press, Inc. v. 58 Dix Ave. Corp.,* 266 F. Supp. 2d 146, 157 (D. Me. 2003).

**Qualified.** The citations provided support the statement that the "physical relationship," Doc. 156-2, PageID # 1115 (Hewes Dep. 17:16-18), "sexual activity;" Doc. 156-11, PageID # 118 (Shaffer Dep. 69:17), and "sexual activity," began in April.

4.  The sexual assaults on Plaintiff by Defendant Pushard ended in May 2017. Doc. 156-2, #1115.

**Qualified.**  The citation provided supports the statement that the "physical relationship" ended in May 2017.  Doc. 156-2, PageID # 1115 (Hewes Dep.  17: 19-21).

5.  The physical "relationship" between Benjamin Pushard, an adult male, and Libby Hewes, a minor female student, was not a "relationship" as a minor cannot consent to a relationship or sexual relationship with an adult. Doc. 156-9, #1565; Doc. 156-10, # 1783; Doc. 158-1, #2575; Doc. 158-2; Doc. 158-4, #2663.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d 53, 56-57 (1st c. 2011).

**Denied.**  The citations provided do not support the statement.

6.  Plaintiff was told to lie about the "relationship" with Defendant Pushard, by Defendant Pushard, to protect Benjamin Pushard from going to jail. Doc. 156-2, #1118; Doc. 156-9, #1574, 1611-1612; Doc. 156-10; #1837; Doc. 156-11, #1885.

**Admitted.**

7.  Defendant Benjamin Pushard was acting as a volunteer JV coach for the Brewer School Department, but in 2015, the Healy Defendants, who had an Agreement/Contract with the Brewer School Department, permitted Benjamin Pushard, as their student trainee, intern, employee, agent and/or contractor, to attend almost all of Plaintiff's sporting events, throughout her high school career, as noted in the Healy social media pages, bragging about Pushard on-line, as early as 2015, and against in 2016, regarding Pushard's work as a student for Healy. *See* Exhibits A & B. Doc. 156-7, #1957-1962; 156-19, #1937-1944.

**Denied.**  The citations provided establish that Brewer and Healy had an agreement (Doc. 156-7 PageID# 1957-196) and that Pushard was a volunteer assistant baseball coach for the spring season in 2014 and 2015.  (Doc. 156-19 PageID # 1937).  There is no evidence at all concerning Pushard's attendance at Plaintiff's sporting events.

8.  The Healy Defendants, as well as Samantha Pangburn and the Brewer School Department Defendants knew that Benjamin Pushard was a student trainee, intern, employee, agent and/or contractor, of Healy Chiropractic LLC, as of 04/28/2016, during the timeframe of Defendant Pushard's sexual assaults on Plaintiff, as noted in Exhibits A & B. Doc. 156-7, #1957-1962; 156-19, #1937-1944.

**Denied.**  The citations provided establish that Brewer and Healy had an agreement to provide training services during the 2014-205 school year and the 2015-2016 school year 1957 – 1962, and that Pushard was a volunteer baseball coach for the spring seasons 2014 and 2015.  There

is no evidence to support the suggestion that Samantha Pangburn or the Brewer School Defendants knew that Pushard was associated with Healy in any way.

9. Samantha Pangburn, Patrick Healy, Jacob Cross, Brewer School Department Athletic Director, David Utterback and other school employees, provided Benjamin Pushard access, beginning in 2015, to Plaintiff, who was a minor and other students at the Brewer High School, when Benjamin Pushard was not licensed and had no reason to be in the school or training room with Plaintiff. The access that Benjamin Pushard had to Plaintiff was not access that was granted to any member of the public and was a special permission granted to him, through Healy Chiropractic, Patrick Healy, as well as the Brewer School Department. Doc. 156-2, #1119-1123. [1]

**Denied.** The citations provided do not support the statement. Neither Samantha Pangburn nor David Utterback is referenced in any of the 20 pages cited and there is no testimony concerning what access was granted to members of the public.

10. Samantha Pangburn, as well as other Brewer School Department employees, Healy Defendants, volunteers, contractors, students and quasi-employees had knowledge of the sexual assaults on Plaintiff by Defendant Benjamin Pushard, and were required to report incidents or suspected incidents of child or adult abuse or neglect as mandated by state law, as well as Title IX. Doc. 156-2, #1137, 1150-1152; Doc. 156-7, #1436 - 1438; Doc. 156-9, #1558-1563, 1611, 1614.

**Denied.** The citations provided do not support the statement.

11. The JV softball team, as well as Sarah Estes and Morgan Small and Danielle McDonough, all of whom were coaches for the Brewer School Department, witnessed Plaintiff getting into Benjamin Pushard's vehicle during Plaintiff's 8th grade softball season; Morgan Small witnessed other concerning behavior, including seeing Libby with Pushard in his vehicle driving down Parkway North in Brewer, Maine, which started that rumor Plaintiff's freshman year of high school, which violated the Brewer School Department's Employee Handbook, and should have been reported; Brewer Police Officer, Ryan Freeman, questions Pushard at the Conservation Club after Pushard had just finished sexually assaulting Libby, and failed to report the abnormal situation of a 14 or 15 year old female in a vehicle with an adult 21,22 year old male. Doc. 156-2, #135, 1152-1153; Doc. 156-9; #1557, 1563; Doc. 156-23, #2093.

**Objection.** The statement that the JV softball team, as well as Sarah Estes and Morgan Small and Danielle McDonough witnessed Plaintiff getting into Pushard' vehicle during Plaintiff's 8th grade softball season should be stricken because it is based on inadmissible hearsay. *See* Doc.156-2, PageID # 1152 (Hewes Dep 165:12-22, 167: 2-3, 9-12) (Hewes' testimony that people saw her getting into Pushard's car is based on what Danielle McDonough told her).

**Denied.** First, the citations provided to do not support the statement. Doc. 156-2 PageID #1135 (presumably) does not mention Ms. Pangburn; 156-2 Page ID #1152- 1153 does not mention Ms.

---

[1] Plaintiff's citation to five pages of the record which each contain 4 pages of deposition transcript is a particularly egregious violation of Local Rule 56(f) and should be stricken for that reason alone.

Pangburn. Doc. 156-9, PageID# 1557 (Hatch Dep. 30: 13-20) consists of Ms. Hatch's testimony that a school should report if it receives a credible report and PageID# 1563 is Megan Hatch's testimony that if someone sees a staff person giving a student a ride that is "not necessarily" concerning behavior (Hatch Dep. 53:4-8).

Second, the policy referred to by Ms. Hatch and cited to in this statement, refers to conduct by School Department employees. Pushard was not an employee of the Brewer School Department. SMF ¶ 13

12.  Plaintiff was 13 years old female student, and Defendant Benjamin Pushard was almost 21 year old male, employed by the school. A reasonable adult would have seen red flags immediately, and would have reported it administration. Megan Hatch, Plaintiff's Title IX expert, testified in her deposition that the school department would be obligated to follow what their policy says. Doc. 156-2, #1152; Doc. 156-9; #1557, 1563.

**Denied.** Hatch testified that "if they received notice of something that they thought fell under their policy of sexual harassment, that they would need to respond in a way that their policy outlined" Doc. 156-9, PageID #1557 (Hatch Dep. 30:13-17) and if someone sees someone giving student a ride, that is "not necessarily" concerning behavior." Doc. 156-9, PageID # 1563 (Hatch Dep. 53: 4- 7).

13.  Plaintiff met with Samantha Pangburn regarding statements and rumors that Plaintiff was engaged in a sexual "relationship" with a 22-year old boyfriend, which should have triggered an investigation under Title IX requirements, as well as Title 22, §4011-A, as testified to by Megan Hatch, Plaintiff's Title IX expert, the school department had an obligation to treat what Plaintiff had told Samantha Pangburn as a complaint of sexual harassment on the part of Benjamin Pushard. Doc. 156-7, #1442-1443; Doc. 156-9, #1557, 1560-1564; Doc. 156-10, #1786; Doc. 156-23, #2109-2010; Doc. 158-4; #2660, 2662, 2664, 2666-2667, 2670-2671.

**Objection.** The portion of the statement concerning what "should" have happened under Title IX should be stricken because it is an argument, not facts.

**Admitted in part**, that Plaintiff met with Samantha Pangburn regarding rumors; **denied in part**, that this meeting should have triggered an investigation. *See* Doc. 156-9, PageID #1557 (Hatch Dep. 30: 13-17) (should act on information they feel falls withing their sexual harassment policy).

14.  Samantha Pangburn and Brewer School Department Superintendent, Gregg Palmer had a conversation that triggered Palmer to write in his notes "Check on Ben Pushard issue.", as Samantha Pangburn mentioned it to Gregg Palmer when they were speaking because it felt relevant; Pangburn also discussed Libby's conversation with her about the "rumors" with Brewer School Department Secretary, Tracy Goodrich. Doc. 156-1, #10861089; Doc. 156-2, #1156; Doc. 156-6, #1360-1361; Doc. 156-23, #2314.

**Objection.** The citation to the Plaintiff's deposition should be stricken as inadmissible hearsay.

15.  Samantha Pangburn, in her deposition, admitted to being Snapchat friends with Plaintiff, and agreed that should not have occurred. Doc. 156-6, #1363. In fact, pursuant to the Brewer School Department Employee Handbook, "friending students on social networking sites" is listed under "Prohibited Contact". Doc. 156-23, #2092.

**Admitted.**

16.  On 04/11/2023, in *State of Maine v. Benjamin Pushard*, Docket No.: PENCD-CR-2022-1622, Defendant Benjamin Pushard pled guilty to Indictment Count 1, Gross Sexual Assault; Count 3, Unlawful Sexual Contact, and Count 8, Criminal Restraint, in the Penobscot Superior Court. *See* Doc. 158-1; Doc. 158-2.

**Admitted.**

17.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis advised the Court that Defendant Pushard's date of birth was 12/15/1994, he was 20 years old when he began having a sexual relationship with the victim, Ms. Hewes. Ms. Hewes date of birth is 05/11/2011. The three counts that he has pled guilty to today charges that he had interactions - - sexual interactions – with her when she was 13 years of age. Doc. 158-2, #2591.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

18.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that at the time they met, Mr. Pushard was a volunteer for the Brewer School Department. He had signed an agreement with Brewer on 03/20/2014. He was also a Brewer High School Junior Varsity baseball volunteer coach since April of 2014. Ms. Hewes was in the eighth grade, and she was 13 years old, and Mr. Pushard was 20 years old. Doc. 158-2, #2592.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

19.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that on 05/25/2021, Ms. Hewes was interviewed at the Child Advocacy Center in Bangor. During this interview, Ms. Hewes disclosed that she had been sexually abused by Mr. Pushard starting at the age of 13. The abuse consisted of digital penetration, penis and vagina penetration, and oral sex. Ms. Hewes also disclosed that Mr. Pushard had videotaped them having sexual intercourse when she was 14 years of age, using his iPod. Doc. 158-2, #2591.

20.     At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that what Ms. Hewes further explained is that she met Mr. Pushard through a softball coach named Morgan Small. Ms. Hewes had - - was having some issues, like any 13 year old teenage girl does, and sought some advice from Ms. Small. Ms. Small recommended that Ms. Hewes speak with Mr. Pushard. Ms. Hewes and Mr. Pushard began talking on Snapchat in late 2014. Over time, the messages gradually became sexual in nature and more flirtatious. Mr. Pushard began to offer to give her a ride in his Jeep. Doc. 1582, #2591-2592.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

21.     At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that Ms. Hewes stated at the CAC interview that the first time there was a sexual encounter was in April of 2015 when she was 13 years old. I believe that Mr. Pushard was 19 at that time. Ms. Hewes explained that there was oral sex between both of them in the back of his Jeep. She also stated that Mr. Pushard digitally penetrated her. A friend of Ms. Hewes, named Brielle Dickinson, was also present in the Jeep. The friend was in the front seat. Mr. Pushard and Ms. Hewes were in the back seat. And this friend was able to confirm that there was a relationship - - a sexual relationship - - between Mr. Pushard and Ms. Hewes. Doc. 158-2, #2592.

**Objection:**  The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

22.     At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that Mr. Pushard would sneak Ms. Hewes into his family's home in Brewer where they would engage in sexual activity. On one occasion, when she was 14 years old, she and Mr. Pushard had sexual intercourse, and he recorded it. In the recording, Ms. Hewes was wearing pink underwear and they were in Mr. Pushard's bedroom. The video lasted one to two hours long, and Mr. Pushard referred to the video afterwards telling Ms. Hewes that he had watched it. Ms. Hewes has also seen the video and knew it existed. Doc. 158-2, #2592-2593.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

23.     At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that she did not really recall how many, but probably brought over a thousand pages of Snapchat conversations, different conversations between Mr. Pushard and Ms. Hewes to Mr. Silverstein's office and provided in discovery. So there's a lot of written evidence that the State would be providing at trial. Doc. 158-2, #2593. Objection:  The cited material consists of statements made by the Assistant District Attorney as to what Plaintiff said occurred and is therefore inadmissible hearsay.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

24.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that Ms. Hewes said that the sexual intercourse would occur regularly in Mr. Pushard's Jeep while they were parked at the Conservation Club in Brewer, the parking lot of St. Joseph's Church in Brewer, or at the parking lot of a snowmobile club. Sexual intercourse would also take place in their respective home when their parents were away. Doc. 158-2, #2593.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

25.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that Ms. Hewes also recalled almost getting caught one night at the Conservation Club by a Brewer police officer when the officer checked Mr. Pushard's ID, and when questioned, Ms. Hewes said she didn't have any. The officer left. Mr. Pushard had said that they were just walking and just -- they were just getting ready to leave. Doc. 158-2, #2593.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

26.  The Plaintiff sought through discovery, the identity of the involved Brewer Police Officer at the Conservation Club event, but Brewer Defendant's advised they could not identify him. *See* Exhibit C, email from John Pottle, dated 05/11/2021.

**Admitted.**

27.  However, on 03/28/2023, Fred Costlow, Esq., attorney the Defendant Benjamin Pushard, notified Plaintiff's counsel, Ezra Willey, Esq., that the identity of the Brewer Police Officer was Ryan Freeman, obtained in discovery in *State of Maine v. Benjamin Pushard*, from Detective Rick Canaar of the Penobscot County Sheriff's Defendant. *See* Exhibit D.

**Admitted.**

28.  At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that the sexual relationship lasted through Ms. Hewes sophomore year at Brewer High School. Mr. Pushard remained a volunteer coach and they would see each other throughout the school year at various events. They continued to keep their relationship a secret, but rumors existed. They eventually stopped seeing each other and ended the relationship. Doc. 158-2, #2593-2534.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

29.   At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated, "so a couple things I want to note at this time is one, that - - relating to Count VIII, is that Mr. Pushard would have Ms. Hewes hide in the back of his Jeep and cover her with various objects, bags, blankets, whatever in the back seat, drive her to his home, close the garage door, and them secrete her into his bedroom so neighbors wouldn't be able to look through the window and him with this child." Doc. 158-2, #2594.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

30    At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated "the other thing I want to point out, that it was Ms. Hewes who took action to end the relationship. She was a teenager, she wanted - - she realized this was not normal, that it was abusive, and she wanted out of the relationship." Doc. 158-2, #2594.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

31.   At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated "in April of 2020, the evidence would show at trial, that Mr. Pushard reached out to Ms. Hewes and explained that he had gotten a new house, and he was, and excuse my language, Your Honor, quote "horny and his dick was hard" end quote and wanted her to come over. Ms. Hewes was offended by this and rejected his offer. Ms. Hewes suspected - - also suspected - - that Mr. Pushard was monitoring her online activity." Doc. 158-2, #2594.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

32.   At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that Mr. Pushed - - I'm sorry - - Ms. Hewes was in therapy at this time, and she was consulting with her counselor, and she began to speak more and more about what happened and gained the tools and courage to confront it. She reached out to Mr. Pushard and demanded an apology. Doc. 158-2, #2594.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

33.   At the Rule 11 Plea Hearing, in her recitation of facts, ADA Joanne Lewis stated that they met at the Brewer Walmart where Mr. Pushard gave Ms. Hewes an apology. However, Ms. Hewes was not satisfied with the apology. She didn't think it was strong enough or honest enough, things of that nature. She asked Mr. Pushard to apologize to her parents. A meeting was scheduled, and Mr. Pushard met with the Hewes - - Ms. Hewes' parents at Cascade Park in Bangor where he confessed to them what happened; that he had, in fact, been engaged in this sexual contact with their daughter, and he apologized. Doc. 158-2, #2595.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

34.   At the Rule 11 Plea Hearing, the Defendant, through his counsel, admitted these facts recited by ADA Lewis indicted by Ms. Lewis in the beginning of her recitation, these acts occurred at the time alleged in the Indictment, and it's not denied, it's admitted by Mr. Pushard today, as he did to her parents, as Ms. Lewis described. And so I think the elements of the case are satisfied by her recitation of the facts at the beginning of her presentation... Doc. 158-2, #2595-2596.

**Objection.** The statements concerning Pushard to the extent they are offered for the truth of the matter asserted should be stricken as inadmissible hearsay.

**Admitted.**

35.   Plaintiff Libby Hewes has been appropriately diagnosed with PTSD, and that the scene was set for the development of the symptoms and signs of PTSD by the contact with Mr. Benjamin Pushard and his acts are the cause of her diagnosis. Doc. 156-10, #1762.

**Qualified.**  The cited material supports the allegation that Plaintiff was diagnosed with PTSD (whether appropriately or not is not stated) but does not support the remaining allegations.

36.   During his deposition, Dr. Geoffrey Thorpe, Plaintiff's psychological expert, confirmed that in his report, he noted the mandated reporting of child abuse, and the fact that formal reports on what was happening had not been reported in this matter. Doc. 156-10, #1787.

**Denied.**  The citation provided does not support this statement.

37.   During his deposition, Dr. Geoffrey Thorpe testified that in reviewing Plaintiff's counseling records with Kim Shaffer, Plaintiff's counselor, dating back to 06/17/2014, it was his understanding that before Plaintiff had met Defendant Benjamin Pushard, she had never made any other sexual abuse allegations against another other man besides Defendant Benjamin Pushard and there was never any suggestion that Plaintiff suffered from PTSD. Doc. 156-10, #1787-1788.

**Objection.**  The statement is inadmissible hearsay.

**Admitted.**

38.   During his deposition, Dr. Geoffrey Thorpe testified that the non-reporting of sexual abuse of a teenage girl to high school officials could effect the child's victim in her recovery and lead to an erosion of trust of people in authority or of people in general. Doc. 156-10, #1789-1791.

**Denied.**  The citation provided does not support the statement.

39.   Defendant Benjamin Pushard entered pleas of guilty to Count I, Class A, Gross Sexual Assault; Count III, Class B, Unlawful Sexual Contact, Count VIII, Class D, Criminal Restraint, for his crimes against Plaintiff. Doc. #158-2, #2585-2586.

**Admitted.**

40.   Samantha Pangburn and the Brewer School Department Defendants were required to properly investigate the allegations surrounding Benjamin Pushard's actions against Plaintiff occurring at the Brewer High School, as well as to process complaints of sexual violence that occurred off campus to determine when the off-campus sexual violence occurred in the context of an education program or activity. Doc. 156-7, #1462.

**Objection**. The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds* of London, 637 F. 3d at 56-57.

**Denied.**  The citation provided does not relate in any way to the Brewer School Department or Samantha Pangburn, and therefore does not support the statement.

41.   Samantha Pangburn and the Brewer School Department Defendants were required to properly investigate the allegations surrounding Benjamin Pushard's actions against Plaintiff, including informing the target student (and the student's parents) of the options for formal or informal action, as well as the school's responsibilities. Doc. 158-4, #2670.

**Objection**. The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds* of London, 637 F. 3d at 56-57.

**Denied.**  The citation provided is merely guidance from the Office of Civil Rights that provides that "[w]hen a school district knows, should reasonably know, or learns of a case involving sexual harassment, sexual discrimination, or any type of violence that creates a hostile environment, it must take immediate action to remedy the situation."  Here, the School Defendants did not know or have reason to know of harassment. *See, e.g.* SMF ¶¶ 16, 23, 24, 26, 31.

42. School staff is expected to report possible incidents of discrimination or harassment of students to the building principal. The Principal and/or Assistant Principal shall respect the confidentiality of the complainant and the individual(s) against whom the complaint is filed to the extent possible, consistent with the school's legal obligations, including the necessity to investigate allegations of discrimination and/or harassment, to take appropriate disciplinary action, and to ensure the safety of the school. These requirements clearly fall under Samantha Pangburn's job title. Doc. 156-7, #1417.

**Objection**. The last sentence of the statement (requirements clearly fall under Samantha Pangburn's job title) should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds* of London, 637 F. 3d at 56-57.

**Qualified.** The Cited material supports all but the last sentence of the statement.

43. Samantha Pangburn and the Brewer School Department Defendants were required to properly investigate the allegations surrounding Benjamin Pushard's actions against Plaintiff, when they knew, or should have reasonably known, or learned of the case involving sexual harassment, sexual discrimination, or any type of violence that creates a hostile environment, and must take immediate action to remedy the situation. These actions must be taken regardless of whether a student or observing party make a complaint, which include ending the harassment; preventing recurrence and remediating effects. Doc. 158-4, #2670.

**Objection.** The citation provided to support this statement is to an unauthenticated document produced by an unidentified entity, "Vector Solutions." Further, the statement should be stricken because it is an argument, not fact.

**Denied.** The document provided to support this statement does not mention Samantha Pangburn or the Brewer School Department, and only purports to set out what should be done with regard for harassment that is known or reasonably should have been known.

44. Under Title IX requirements and OCR's 2001 Guidance, a responsible employee includes any employee who has the authority to take action to redress sexual violence' who has been given the duty of reporting sexual violence or any other misconduct by students to the Title IX coordinator or other appropriate designee, or whom a student could reasonably believe has this authority or duty. Clearly, as noted in the Brewer School Department Employee Handbook (Doc. 156-7, #1417), Samantha Pangburn was the appropriate responsible employee for Plaintiff to report to, and Ms. Pangburn had an obligation to following the Title IX, Brewer School Department Employee Handbook, Brewer School Department's Affirmative Action Plan and Vector Solutions Title IX and Sexual Misconduct for K-12, requirements, which she did not do. Doc. 156-7, #1448.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. *See, e.g., Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.

11

**Denied.** SMF ¶ 14.

45. Samantha Pangburn and the Brewer School Department Defendants failure to act, failure to follow requirements and report all relevant details about to the Title IX coordinator, or other appropriate school designee, or a demonstrated deliberate indifference to harassment (meaning a response that is clearly unreasonable in light of the known circumstances, as occurred here), could result in civil liability for the school district under Title IX. Doc. 156-7, #1449; Doc. 158-4, #2670.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.

**Denied.** The citations provided do not support this statement.

46. If the accused harasser is a teacher or district employee, then the school district is responsible regardless of whether the district knew or not. [The individual] may be performing his or her job in the context of providing benefits or services to the student; if the accused harasser is another student, a third party or school employee who is not acting within the context of that employee's responsibilities or job duties, once the situation is known, (or should be known), the school must investigate the conduct and take appropriate steps to resolve the situations. Doc. 158-4, #2671.

**Objection.** The citation provided to support this statement is to an unauthenticated document produced by an unidentified entity, "Rector Solutions." Further, the statement should be stricken because it is an argument, not fact.

**Admitted.**

47. Consistent with Supreme Court precedent and the text of Title IX, a school must response when 1) the school has actual knowledge of sexual harassment; 2) the harassment occurred within the school's education program or activity; and 3) it was against a person in the United States. The Vector Solution Final Rule Requirement requires schools to investigate and adjudicate formal complaints of sexual harassment using a grievance process that incorporates due process principles, treats all parties fairly, and reaches reliable responsibility determinations. Staff to student misconduct is illegal and needs to be reported to law enforcement. Because Plaintiff was a minor, female student, Samantha Pangburn and the Brewer School Department were required to report the rumors and statements that she was being sexually assaulted by a 22-year old adult male! Doc. 156-23, #2110, 2208-2219.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. See, e.g*., Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.

48. Further, in accordance with the Brewer School Department Employee Handbook, once Samantha Pangburn, or any Brewer School Department Defendant became aware of possible

sexual or other unlawful harassment, they were required to immediately advise the affirmative action officer and superintendent so it could be investigated in a timely and confidential manner, which did not occur. Doc. 156-7, #1392; Doc. 15623, #2109.

**Admitted.**

49.   Pangburn's decision not to investigate and report was unreasonable in light of the circumstances, including other information known to school officials about Pushard's inappropriate contact with Libby, his lack of training or certification, Libby's young age, and her heightened vulnerability to sexual abuse and exploitation. Doc. 156-9, #1615.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.  The statement should also be stricken because it is inadmissible expert testimony.

**Denied.**  Even if Ms. Hatch's opinion based on her review of allegations in the complaint is deemed an admissible fact, the page of her report does not support this statement.  Ms. Hatch  does not mention "Libby's young age, and her heightened vulnerability," nor does she opine on that Pangburn acted "unreasonably."  *See* Doc. 156-9, PageID # 16`5.

50.   Pangburn and the Brewer School Department's decision not to investigate and report was unreasonable, particularly considering other information known to students, including Preston Weatherbie who texted Libby the summer before her sophomore year and told her he knew she was "having sex with Ben. . . a 22-year old". Doc. 156-2, #1153.

**Objection.** The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.

**Admitted in part**, that Preston Weatherbie texted Plaintiff; **denied in part** that the Brewer School Department made a "decision" not to investigate in light of texts it did not know about. The citation provided does not support this statement.  Nor does the statement support the allegation that the School Department acted unreasonably.

51.   Pangburn and the Brewer School Department's decision not to investigate and report was unreasonable, particularly considering other information known to school officials, including Phil Pushard, a coach at the Brewer High School, who caught Libby and Benjamin Pushard talking on FaceTime, while Pushard was in his home, with Phil Pushard stating to Benjamin Pushard that he "heard something was going on", and that "he didn't want to know the details", and that he "wants it to stop." Doc. 156-2, #1156-1157.

**Objection**. The statement should be stricken because it is an argument, not a statement of fact. See, e.g., *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyds of London*, 637 F. 3d at 56-57.

**Denied.**  The citation provided does not support the statement.

Dated: November 14, 2023            */s/ Melissa A. Hewey*
                                                      Melissa A. Hewey
                                                      *Counsel for Defendants Samantha Pangburn, and the Brewer School Department*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com